

**DREW ALEXANDER, SHERIFF**
COUNTY OF SUMMIT • STATE OF OHIO

August 6, 2007

Deputy Stacy R. Clark
853 Beechwood Drive
Tallmadge, OH 44278

Dear Deputy Clark:

Effective immediately, you have been placed on administrative leave with pay pending the outcome of an internal investigation. Your leave status may change once the investigation is complete. If that occurs, you will be notified in writing of the change and the options you have available to you under the provisions of the Collective Bargaining Agreement.

While you are on administrative leave, you are not to exercise any authority as a Sheriff's Deputy. You are to turn in your Sheriff's identification, badge, and any other County issued equipment to Lieutenant Richard Paolucci.

I am providing a copy of this letter to your union representatives. As this is a pending investigation, you should direct any communication concerning this matter through your union representatives.

Very truly yours,

DREW ALEXANDER
Sheriff, County of Summit

cc:     Sheriff Drew Alexander
        Chief Garry L. Moneypenny
        Chief Steven W. Finical
        Lt. John T. Karabatsos
        Director Allyson Miller Leonard
        Chuck Choate, Staff Representative, F.O.P./O.L.C., Inc.
        Deputy Douglas E. Quiner, Chairman, F.O.P., Local Lodge No. 139
        File

**EXHIBIT**
F

ADMINISTRATION/OPERATIONS • 53 UNIVERSITY AVE. • AKRON, OHIO 44308-16
PHONE 330-643-2181 • FAX 330-434-2701
SUMMIT COUNTY JAIL • 205 EAST CROSIER STREET • AKRON, OHIO 44311-2351
PHONE 330-643-2171 • FAX 330-253-4138

001879



*Inves. Fig*

**DREW ALEXANDER, SHERIFF**
COUNTY OF SUMMIT • STATE OF OHIO

August 23, 2007

Deputy Stacy R. Clark
853 Beechwood Drive
Tallmadge, OH 44278

Dear Deputy Clark:

On August 6, 2007, you were placed on administrative leave with pay pending the outcome of an internal investigation. On August 23, 2007, I was advised by Lt. Richard Paolucci that, after concluding the investigation, there is insufficient evidence to support any criminal charges. Accordingly, pursuant to the Sheriff's directive, your administrative leave with pay status will end Friday, August 24, 2007, and you are returned to full duty status. Therefore, effective Monday, August 27, 2007, you will return to your regular shift assignment in Court and Special Services. You will report to Lt. Kandy Fahteree. Sgt. Jerome Hall has already contacted you and arranged for you to come in on Thursday, August 23, 2007, so that he may return your Sheriff's I.D., Badge, weapon and any other County issued equipment that you turned over on August 6, 2007.

Your Union Representative, Chuck Choate, has been contacted and advised of these developments and he is being provided with a copy of this letter. If you or Mr. Choate have any questions regarding this matter, please feel free to contact me.

Very truly yours,

DREW ALEXANDER
Sheriff, County of Summit

ALLYSON MILLER LEONARD
Director of Administration/Personnel

cc:   Sheriff Drew Alexander
      Chief Garry L. Moneypenny
      Chief Steven W. Finical
      Christine L. Croce, Executive Director of Administration
      Lt. Kandy Fatheree

      Chuck Choate, Staff Rep., FOP/OLC, Inc.
      Dep. Douglas E. Quiner, Chairman, FOP 139
      Payroll/Trish Durkin/Angie Huth
      File ✓

ADMINISTRATION/OPERATIONS • 53 UNIVERSITY AVE. • AKRON, OHIO 44308-1679
PHONE 330-643-2181 • FAX 330-434-2701
SUMMIT COUNTY JAIL • 205 EAST CROSIER STREET • AKRON, OHIO 44311-2351
PHONE 330-643-2171 • FAX 330-253-4138

001881

**SUMMIT COUNTY SHERIFF'S OFFICE**
**SHERIFF DREW ALEXANDER**
**CONFIDENTIAL INVESTIGATION**

INCIDENT REPORT NO.
INTERNAL INVESTIGATION

FROM: Lt. Richard Paolucci

TO: Sheriff Alexander, Chief Moneypenny, Chief Thornton & Personnel

SUBJECT:  Deputy Stacy Clark

PLACE OF OCCURRENCE:
State Board of Pharmacy

77 S. High Street- #1702

Columbus, Ohio 43215

DATE OF INCIDENT:  August 03, 2007

DATE INVESTIGATED:  August 06, 2007

ARRESTS:

**SYNOPSIS:**

On **August 03, 2007**, Investigator Robert Cole of the Ohio State Board of Pharmacy, met with Sheriff Alexander, Chief Thornton and myself regarding a pending investigation being conducted by the State Board Investigative Unit. Mr. Cole advised that the State Board of Pharmacy was investigating an LPN named Thomas Werner, at the Falls Pain Management Center in Cuyahoga Falls, Ohio. During the course of their investigation, it was alleged that Deputy Stacy Clark had provided false information to LPN Werner in obtaining three (3) prescriptions for pain medication. Two (2) of the prescriptions were for Schedule II Controlled Substances; Hydromorphine (Dilaudid) and Morphine Sulfate (Avinza). The third prescription was for Tramadal (Ultram), which is also used in the management of pain.

Mr. Cole advised that investigator Thomas Miksch, would be assigned this investigation, at which time I was advised by Sheriff Alexander to assist Investigator Miksch with the said investigation on behalf of the Summit County Sheriff's Office.

Pursuant to this investigation, it was determined that Deputy Stacy Clark did not violate any criminal laws of the state of Ohio in regard to her obtaining her prescriptions as previously alleged. Mr. Werner did however admit to violating the procedures in his duties at the Pain Center. These violations were turned over to the State Nursing Board for further investigation.

The facts of this investigation were discussed with Cuyahoga Falls Prosecutor, Greg Ward, who advised there was insufficient evidence to support criminal charges in this case.

**ACTION TAKEN:**

PAGE 1 OF 4
Form IB-1005-A
Revised 6/6/97

BY: Lt. RPL. 0172   DATE: 10/24/07

001883

001884

### SUMMIT COUNTY SHERIFF'S OFFICE
### SHERIFF DREW ALEXANDER
### CONFIDENTIAL INVESTIGATION

On **August 06, 2007**, at 1050 hours, Chief Thornton and I met with Deputy Clark in the office of Chief Thornton and advised her of the pending investigation.

On **August 06, 2007**, at 1140 hours, Investigator Miksch, Chief Finical and I met with and interviewed Deputy Clark. This interview also took place in the office of Chief Thornton. (See attached report submitted by Investigator Miksch.) At the conclusion of the interview, Deputy Clark was served with a letter signed by Sheriff Alexander advising Deputy Clark that she was being placed on Administrative Leave with pay pending the outcome of this investigation. Deputy Clark was advised to turn over her service weapon and all ammunitions to myself, which she did.

Sgt. Jerome Hall then escorted Deputy Clark to her residence at which time she relinquished her Summit County Sheriff's Office Identification card along with her department issued breast badge.

On **August 07, 2007**, Investigator Miksch and I met with Sgt. Gerone French of the Court and Special Services Division. This interview was conducted based on information provided by Deputy Clark during the above interview. Sgt. French provided a written statement. (See Attached).

On **August 09, 2007**, I contacted Michelle Smith of the Count of Summit Insurance Department. Ms. Smith assists with the EAP (Employee Assistance Program). I advised Ms. Smith of the pending investigation in attempt to ascertain if Deputy Clark had voluntarily admitted herself into the substance abuse program which is offered to all county employees. Ms. Smith advised that all the programs are confidential and that without a signed medical release from the employee, she could not share any information regarding Deputy Clark. I then faxed a certified copy of a medical release form which was signed by Deputy Clark during the interview conducted on August 06, 2007.

On **August 09, 2007**, Investigator Miksch and I met with and interviewed the following medical personnel at the Cuyahoga Falls General Hospital-Pain Management Clinic: Mr. Richard Hohan the Pain Clinic Program Director, Mr. Glenn Rech the Clinical Pharmacist, Ms. Sandy Costello the Pain Center Manager, Dr. Robert Geiger, M.D. and Dr. James Bressi, D.O. Investigator Miksch requested copies of any and all medical records pertaining to Deputy Stacy Clark.

On **August 10, 2007**, Michelle Smith from the County of Summit Insurance Department contacted me. She advised that the only record they have of Deputy Stacy Clark dates back to June 06, 2006, when she admitted herself for marital related issues. There was no record of Deputy Clark for any drug related issues.

On **August 13, 2007**, Investigator Miksch and I met with and interviewed Mr. Thomas Werner. This meeting took place at the Summit County Sheriff's Office- 4th floor conference room. Mr. Werner was present without legal counsel and agreed to the interview. He supplied the following information:

### INTERVIEW

**Thomas Werner**
**1096 Stinard Avenue**
**Akron, Ohio 44312**
**(330) 801-0191-C**

PAGE 2 OF 4
Form IB-1005-A
Revised 6/6/97

BY: L. P.P. . 0172       DATE: 10/24/07

**SUMMIT COUNTY SHERIFF'S OFFICE**
**SHERIFF DREW ALEXANDER**
**CONFIDENTIAL INVESTIGATION**

Mr. Werner is a Licensed Practicing Nurse and was employed at the Falls Pain Clinic on a part-time basis from November of 2003 to March of 2007, when he was given a full-time position. Mr. Werner resigned from his position on May 29, 2007. He states his duties included: conducting initial screenings of patients, monitoring patients whenever they were sedated, printing prescriptions and obtaining Doctor's signatures for the said prescriptions. Mr. Werner states he met Stacy Clark who was a client at the Cuyahoga Falls Pain Clinic at Cuyahoga Falls General Hospital. He described their relationship as mainly professional, but advised they shared personal information during Stacy's office visits at the Pain Clinic. He states the personal information they spoke of was mainly related to Stacy's divorce and her employment at the Summit County Sheriff's Office. Mr. Werner stated he was physically attracted to Stacy and attempted to pursue his feelings. He states on May 17, 2007, he did in fact ask Stacy if her divorce was final in hopes that she would meet him after work for a cup of coffee. He advised that Stacy gave him her phone number even though her divorce was not final.

Mr. Werner was then shown a copy of a handwritten statement he had provided to the Administrative Staff at the Pain Clinic regarding his actions on May 17, 2007. He confirmed the statement to be true and accurate. (See statement is statement.) Mr. Werner claims that on May 17, 2007, he observed Stacy sitting in the waiting area at the Pain Clinic and questioned her as to why she was there since she did not have an office visit scheduled for this date. He states she told him that her doctor had prescribed her a 30 day supply of medications and was questioning why she had only been given a 7 day supply. Mr. Werner states based on this information, he printed out a 30 day supply prescription for her. He admits that he did this without verifying the information via the patient's chart, which is in violation of the policy at the Pain Clinic. Mr. Werner had hoped to further his relationship with Stacy by doing her this favor. He also stated that since he was a Deputy Sheriff, he trusted her word. Mr. Werner later admitted to a fellow employee what he had done. This initiated the investigation by the State Board of Pharmacy. **This concluded the interview.**

Pursuant to this investigation, it was determined that the Cuyahoga Falls Pain Management Center had kept 2 separate sources of patient information. All patient information was noted in the patient's individual chart. This included but is not limited to all office visits, treatments provided, prescriptions issued and all changes in prescriptions. They also had a computer system which kept records of all current and past prescriptions. If a change is entered in the patients file regarding prescriptions or dosage, then it would have to be entered in the computer system to keep it updated. Mr. Werner did not check Stacy's file prior to generating her prescriptions and therefore continually gave her a 30 day supply of medications when in fact her prescription had been changed to a 7 day supply, which was noted in her file.

It was further determined that due to their record keeping, there is no evidence to support that Stacy Clark was deceptive in obtaining her medications.

On **October 23, 2007**, I obtained a copy of the report submitted by Investigator Thomas Miksch. This report is in the master file.

On **October 24, 2007**, I met with Cuyahoga Falls Municipal Court Prosecutor, Greg Ward and reviewed the facts of this investigation. Prosecutor Ward advised there was insufficient evidence to support criminal charges against either Deputy Clark or Mr. Werner.

This case is therefore cleared.

PAGE 3 OF 4
Form IB-1005-A
Revised 6/6/97

BY: _L͟T͟.͟R͟.͟P͟.͟ 0172_ 　　 DATE: _10/24/07_

## SUMMIT COUNTY SHERIFF'S OFFICE
## SHERIFF DREW ALEXANDER
## CONFIDENTIAL INVESTIGATION

**EVIDENCE:**

**PHYSICAL DESCRIPTION:**
1)

|  |  |
|---|---|
| SSN: | Height: |
| DOB: | Weight: |
| SCSO ID#: | Hair  : |
|  | Eyes  : |

**VEHICLE DESCRIPTION:**

1)

VIN:

BY: LT. P. _____ 0172     DATE: 10/24/07

PAGE 4 OF 4
Form IB-1005-A
Revised 6/6/97

001889

8/3/07 MET W/ ROBERT COLE (PHARMACY BRD.) 51-CH. THORNTON
1500 — PROVIDED REPORT - ADVISED TOM MIKSCH - INVESTICA...

8/6/07 — ADVISED STACY OF INVESTIGATION
1050

8/6/07 T. MIKSCH + I - INTVW. STACY - SIGNED MED. RELEASE
1130 — SERVED LEAVE W/ PAY (GUN / AMMO / ID / BADGE)

8/7/07 INTVW. SGT. FRENCH - WRITTEN STATEMENT

8/9/07 FAXED MED. REL. TO MICHELLE SMITH ③

8/9/07 INTW. - 2 DRS. / PHARMACY MEMBERS @ CFGH - REQUESTED
ALL MED. RECORDS

8/10/07 MICHELLE SMITH - ADVISED STACY SELF REFERRAL (JUNE 6, 2006)
FOR 5 SESSIONS - MARITAL ISSUES - NOT DRUGS

8/13/07 INTVW. W/ TOM WERNER.

8/20 — MET W/ RICK + GLENN @ HOSPITAL

8/22/07 " " " - CLEARED

8/23/07 S.C- Served letter. to RETURN TO WORK.

001891

8/3/07 Met w/ Robert Cole Pharmacy Bd. 51-PH. Thornton
1500 - Provided Report - Advised Tom Kirsch - Investig.

8/6/07 - Advised Stacey of investigation
0930

8/6/07 T. Miesch + I - Intvw. Stacey. Signed Med. Release
1130 Obtained letter w/ Dr. Glen Jones, 10/8/2006

8/7/07 Intvw. Det. French
8/9/07 Faxed Med. Rel. to Melanie Smith (S)
8/9/07 Intvw. 2 Bd. Pharmacy members : (3564) - Requested All Med. Records
8/10/07 Melanie Smith - Advised Stacy Self Referral (June 6, 2006) For 5 Sessions Marital Issues - Not Drugs

**OHIO STATE BOARD OF PHARMACY**
**77 S. High Street, Suite 1702**
**Columbus, Ohio 43215-6126**
**614-466-4143**

**REPORT OF INVESTIGATION**

**CASE NO.:**           2007-1508                                    ROI - 1

**REPORT DATE:**        August 2, 2007

**REPORT BY:**          Robert L. Cole
                        Compliance Supervisor

**FILE NAME:**          Stacy R. Clark-Ahwajee
                        aka Stacy Clark

**TYPE OF INCIDENT:**   Trafficking in Drugs 2925.03
                        Deception to Obtain a Dangerous Drug  O.R.C. 2925.22
                        Illegal Drug Possession O.R.C. 2925.11

**LOCATION OF INCIDENT:** Summit County, Ohio

**Synopsis:**
Stacy R. Clark-Ahwajee, a.k.a. Stacy Clark deceived LPN Thomas Werner into providing her with four false prescriptions from prescribers at the Fall Pain Management Center in Summit County, Ohio.  Three of the prescriptions were for the Schedule II Controlled Substances hydromorphone and morphine sulfate.  The fourth prescription was for Tramadol, a highly abused Dangerous Drug frequently used in the management of pain.

**Investigation:**
Stacy R. Clark-Ahwajee, a.k.a. Stacy Clark, in May of 2007, has been a pain management patient of the Falls Pain Management Center (FPMC) since 2004 or 2005. Her most recent contact person at the FPMC was LPN Werner.  She is employed as a Summit County Deputy Sheriff.

Thomas C. Werner, Jr., is a Licensed Practical Nurse (LPN) previously employed at Cuyahoga Falls General Hospital (CFGH).  He was assigned to their pain clinic, Falls Pain Management Center (FPMC).  His duties were to obtain a new patient's medical history, their vital signs, administer drugs, and assist prescribers following the clinic's policy and procedures.

On May 23, 2006, Clark-Ahwajee was dispensed prescription number 363690 from Rite-Aid Pharmacy #1351, 137 East Avenue, Tallmadge, Ohio.  This prescription was authorized by prescriber Leann Whyte for 90 dosage units of Tramadol 50 mg [a 22-

This report may not be distributed without the express permission of the Board of Pharmacy's Assistant Executive Director.

2007-1508
August 2, 2007
Page 2 of 9

day supply]. The cost of this prescription was $61.99. Additionally, the patient paid a five dollar co-pay. This prescription has not been retrieved from the pharmacy.

On May 23, 2006, Clark-Ahwajee was dispensed prescription number 363691 from Rite-Aid Pharmacy #1351. This prescription was authorized by prescriber Leann Whyte for 90 dosage units of oxycodone 5/325 mg [a 22-day supply]. The cost of this prescription was $49.98. Additionally, the patient paid a five dollar co-pay. This prescription has not been retrieved from the pharmacy.

On February 22, 2007, Clark-Ahwajee was dispensed prescription number 385958 from Rite-Aid Pharmacy #1351. This prescription was authorized by prescriber Anita Amlani for 30 dosage units of Ambien CR 12.5 mg [a 30-day supply]. The cost of this prescription was $129.99. Additionally, the patient paid a five dollar co-pay. This prescription has not been retrieved from the pharmacy.

On April 4, 2007, Clark-Ahwajee was dispensed prescription number 389237 from Rite-Aid Pharmacy #1351. This prescription was authorized by prescriber Steven D. Smith for 28 dosage units of Tramadol 50 mg [a 7-day supply] . The cost of this prescription was $17.98. Additionally, the patient paid a five dollar co-pay. This prescription has not been retrieved from the pharmacy.

On April 12, 2007, Clark-Ahwajee was dispensed prescription number 389924 from Rite-Aid Pharmacy #1351. This prescription was authorized by prescriber James P. Bressi for 28 dosage units of Tramadol 50 mg [a 7-day supply]. The cost of this prescription was $17.98. Additionally, the patient paid a five dollar co-pay. This prescription has not been retrieved from the pharmacy.

On April 17, 2007, Clark-Ahwajee was dispensed prescription number 390304 from Rite-Aid Pharmacy #1351. This prescription was authorized by prescriber Steven D. Smith for 28 dosage units of Tramadol 50 mg [a 7-day supply]. The cost of this prescription was $17.98. Additionally, the patient paid a five dollar co-pay. This prescription has not been retrieved from the pharmacy.

On April 25, 2007, Clark-Ahwajee was dispensed prescription number 391099 from Rite-Aid Pharmacy #1351. This prescription was authorized by prescriber Steven D. Smith for 28 dosage units [a 7-day supply] of Tramadol 50 mg. The cost of this prescription was $17.98. Additionally, the patient paid a five dollar co-pay. This prescription has not been retrieved from the pharmacy.

On May 3, 2007, Clark-Ahwajee was dispensed prescription number 391814 from Rite-Aid Pharmacy #1351. This prescription was authorized by prescriber Steven D. Smith for 28 dosage units [a 7-day supply] of Tramadol 50 mg. The cost of this prescription was $17.98. Additionally, the patient paid a five dollar co-pay. This prescription has not been retrieved from the pharmacy.

This report may not be distributed without the express permission of the Board of Pharmacy's Assistant Executive Director

2007-1508
August 2, 2007
Page 2 of 9

day supply]. The cost of this prescription was $61.99. Additionally, the patient paid a five dollar co-pay. This prescription has not been retrieved from the pharmacy.

On May 23, 2006, Clark-Ahwajee was dispensed prescription number 363691 from Rite-Aid Pharmacy #1351. This prescription was authorized by prescriber Leann Whyte for 90 dosage units of oxycodone 5/325 mg [a 22-day supply]. The cost of this prescription was $49.98. Additionally, the patient paid a five dollar co-pay. This prescription has not been retrieved from the pharmacy.

On February 22, 2007, Clark-Ahwajee was dispensed prescription number 385958 from Rite-Aid Pharmacy #1351. This prescription was authorized by prescriber Anita Amlani for 30 dosage units of Ambien CR 12.5 mg [a 30-day supply]. The cost of this prescription was $129.99. Additionally, the patient paid a five dollar co-pay. This prescription has not been retrieved from the pharmacy.

On April 4, 2007, Clark-Ahwajee was dispensed prescription number 389237 from Rite-Aid Pharmacy #1351. This prescription was authorized by prescriber Steven D. Smith for 28 dosage units of Tramadol 50 mg [a 7-day supply] . The cost of this prescription was $17.98. Additionally, the patient paid a five dollar co-pay. This prescription has not been retrieved from the pharmacy.

On April 12, 2007, Clark-Ahwajee was dispensed prescription number 389924 from Rite-Aid Pharmacy #1351. This prescription was authorized by prescriber James P. Bressi for 28 dosage units of Tramadol 50 mg [a 7-day supply]. The cost of this prescription was $17.98. Additionally, the patient paid a five dollar co-pay. This prescription has not been retrieved from the pharmacy.

On April 17, 2007, Clark-Ahwajee was dispensed prescription number 390304 from Rite-Aid Pharmacy #1351. This prescription was authorized by prescriber Steven D. Smith for 28 dosage units of Tramadol 50 mg [a 7-day supply]. The cost of this prescription was $17.98. Additionally, the patient paid a five dollar co-pay. This prescription has not been retrieved from the pharmacy.

On April 25, 2007, Clark-Ahwajee was dispensed prescription number 391099 from Rite-Aid Pharmacy #1351. This prescription was authorized by prescriber Steven D. Smith for 28 dosage units [a 7-day supply] of Tramadol 50 mg. The cost of this prescription was $17.98. Additionally, the patient paid a five dollar co-pay. This prescription has not been retrieved from the pharmacy.

On May 3, 2007, Clark-Ahwajee was dispensed prescription number 391814 from Rite-Aid Pharmacy #1351. This prescription was authorized by prescriber Steven D. Smith for 28 dosage units [a 7-day supply] of Tramadol 50 mg. The cost of this prescription was $17.98. Additionally, the patient paid a five dollar co-pay. This prescription has not been retrieved from the pharmacy.

This report may not be distributed without the express permission of the Board of Pharmacy's Assistant Executive Director

**OHIO STATE BOARD OF PHARMACY**
**77 S. High Street, Suite 1702**
**Columbus, Ohio 43215-6126**
**614-466-4143**

**REPORT OF INVESTIGATION**

| | | |
|---|---|---|
| **CASE NO.:** | 2007-1508 | ROI - 1 |
| **REPORT DATE:** | August 2, 2007 | |
| **REPORT BY:** | Robert L. Cole<br>Compliance Supervisor | |
| **FILE NAME:** | Stacy R. Clark-Ahwajee<br>aka Stacy Clark | |
| **TYPE OF INCIDENT:** | Trafficking in Drugs 2925.03<br>Deception to Obtain a Dangerous Drug  O.R.C. 2925.22<br>Illegal Drug Possession O.R.C. 2925.11 | |

**LOCATION OF INCIDENT:** Summit County, Ohio

**Synopsis:**
Stacy R. Clark-Ahwajee, a.k.a. Stacy Clark deceived LPN Thomas Werner into providing her with four false prescriptions from prescribers at the Fall Pain Management Center in Summit County, Ohio.  Three of the prescriptions were for the Schedule II Controlled Substances hydromorphone and morphine sulfate.  The fourth prescription was for Tramadol, a highly abused Dangerous Drug frequently used in the management of pain.

**Investigation:**
Stacy R. Clark-Ahwajee, a.k.a. Stacy Clark, in May of 2007, has been a pain management patient of the Falls Pain Management Center (FPMC) since 2004 or 2005.  Her most recent contact person at the FPMC was LPN Werner.  She is employed as a Summit County Deputy Sheriff.

Thomas C. Werner, Jr., is a Licensed Practical Nurse (LPN) previously employed at Cuyahoga Falls General Hospital (CFGH).  He was assigned to their pain clinic, Falls Pain Management Center (FPMC).  His duties were to obtain a new patient's medical history, their vital signs, administer drugs, and assist prescribers following the clinic's policy and procedures.

On May 23, 2006, Clark-Ahwajee was dispensed prescription number 363690 from Rite-Aid Pharmacy #1351, 137 East Avenue, Tallmadge, Ohio.  This prescription was authorized by prescriber Leann Whyte for 90 dosage units of Tramadol 50 mg [a 22-

This report may not be distributed without the express permission of the Board of Pharmacy's Assistant Executive Director.

2007-1508
August 2, 2007
Page 3 of 9

On May 10, 2007, Clark-Ahwajee was dispensed prescription number 392440, attachment 13, from Rite-Aid Pharmacy #1351. This prescription was authorized by prescriber Anita Amlani for 30 dosage units of Ambien CR 12.5 mg [a 30 day supply]. The cost of this prescription was $129.99. Additionally, the patient paid a five dollar co-pay. On August 1, 2007, attachments #13 was obtained by OSBP Compliance Supervisor Robert L. Cole from Rite-Aid #1351.

On May 11, 2007, Clark-Ahwajee was dispensed prescription number 392469 from Rite-Aid Pharmacy #1351. This prescription was authorized by prescriber Steven D. Smith for 28 dosage units [a 7-day supply] of Tramadol 50 mg. The cost of this prescription was $17.98. Additionally, the patient paid a five dollar co-pay. This prescription has not been retrieved from the pharmacy.

**First Deception by Clark-Ahwajee**
On May 17, 2007, Clark-Ahwajee went to FPMC and spoke with LPN Werner. She told him that she had been authorized an increase in the drug quantities on her prescriptions from a 7-day supply to a 28-day supply. Werner made the assumption she was telling him the truth, when she had not. Werner violated FPMC Policy as he did not verify the prescription drug quantity change by reviewing her medical chart or speaking with a staff physician. Had he done so he would have discovered no such change had been authorized.

Instead, he produced from FPMC's computer system three prescriptions for Clark-Ahwajee:
- 84 dosage units of the C-II drug hydromorphone 2 mg;
- 28 dosage units of the C-II drug Avinza (morphine); and,
- 112 dosage units of the prescription drug Tramadol 50 mg.

**Authorization of three false prescriptions**
LPN Werner printed two prescriptions [hydromorphone 2mg and Avinza 30 mg] and gave them to Robert Geiger, M.D., for his signature. Geiger, assuming the prescription change had been authorized by another staff physician of FPMC, signed the illegal drug documents.

Werner then printed a third prescription [Tramadol] and gave it to James Bressi, D.O., for his signature. Bressi, assuming the prescription change had been authorized by another staff physician of FPMC, signed the illegal drug document.

Werner, in turn gave the three prescriptions to Clark-Ahwajee. Two of those prescriptions were dispensed on May 17, 2007. The remaining prescription was dispensed on May 21, 2007.

**Dispensing of the first and second false prescriptions**
On May 17, 2007, Clark-Ahwajee was dispensed prescription number 392984, attachment #1, from Rite-Aid Pharmacy #1351. This prescription was authorized, by

2007-1508
August 2, 2007
Page 4 of 9

deception, by prescriber Robert S. Geiger for 84 dosage units [a 28-day supply] of hydromorphone 2 mg.  The cost of this prescription was $50.98.  Additionally, the patient paid a five dollar co-pay.  Her electronic signature, as maintained by Rite-Aid #135, documents her receipt of that prescription, see attachment #2.  On June 26, 2007, attachments # 1 and #2 were obtained by CA Miksch from Rite-Aid #1351.

On May 17, 2007, Clark-Ahwajee was dispensed prescription number 393017, attachment 3, from Rite-Aid Pharmacy #1351.  This prescription was authorized, by deception, by doctor Bressi for 112 dosage units [a 28-day supply] of Tramadol 50 mg.  The cost of this prescription was $45.99.  Additionally, the patient paid a five dollar co-pay.  Her electronic signature, as maintained by Rite-Aid #135, documents her receipt of that prescription, see attachment #4.  On August 1, 2007, attachments #3 and #4 were obtained by OSBP Compliance Supervisor Robert L. Cole from Rite-Aid #1351.

**Dispensing of the third false prescription**
On May 21, 2007, Clark-Ahwajee was dispensed prescription number 393333, attachment #5, from Rite-Aid Pharmacy #1351.  This prescription was authorized on May 17, 2007, by deception, by prescriber Robert S. Geiger for 28 dosage units of Avinza 30 mg [a 28-day supply].  The cost of this prescription was $111.99.  Additionally, the patient paid a five dollar co-pay.  This prescription, see attachment #5, was picked up and signed for by Clark-Ahwajee.  Her electronic signature, as maintained by Rite-Aid #135, documents her receipt of that prescription, see attachment #6.  On June 26, 2007, attachments #5 and #6 were obtained by CA Miksch from Rite-Aid #1351.

**Second deception by Clark-Ahwajee for a fourth prescription**
On May 22, 2007, Clark-Ahwajee and LPN Werner were talking on the telephone.  Clark-Ahwajee told Werner that "she could not find her Dilaudid prescription ... but, it was probably at work."  She then inquired if she needed to write-up a police report to get another prescription.  Werner advised that he would telephone her the next day to inquire if she had found her prescription.  If not, "I would print out a new one."

On May 23, 2007, Werner telephoned Clark-Ahwajee.  She told Werner that  she had been unable to locate the prescription issued to her on May 17, 2007.  In fact, this particular prescription was dispensed to Clark-Ahwajee on May 17, 2007.

**Authorization of the fourth false prescription**
Based on Clark-Ahwajee's lie, Werner printed another prescription [393515], attachment #7, for 84 dosage units of hydromorphone.  Werner then presented the printed prescription to Dr. James Bressi for signature.  Bressi, assuming that the prescription had been authorized for the patient, signed the prescription on May 23, 2007.  After work that day, Werner delivered it to Rite Aid #1351 in Tallmadge, Ohio for dispensing to Clark Ahwajee.

This report may not be distributed without the express permission of the Board of Pharmacy's Assistant Executive Director

2007-1508
August 2, 2007
Page 4 of 9

deception, by prescriber Robert S. Geiger for 84 dosage units [a 28-day supply] of hydromorphone 2 mg.  The cost of this prescription was $50.98.  Additionally, the patient paid a five dollar co-pay.  Her electronic signature, as maintained by Rite-Aid #135, documents her receipt of that prescription, see attachment #2.  On June 26, 2007, attachments # 1 and #2 were obtained by CA Miksch from Rite-Aid #1351.

On May 17, 2007, Clark-Ahwajee was dispensed prescription number 393017, attachment 3, from Rite-Aid Pharmacy #1351.  This prescription was authorized, by deception, by doctor Bressi for 112 dosage units [a 28-day supply] of Tramadol 50 mg.  The cost of this prescription was $45.99.  Additionally, the patient paid a five dollar co-pay.  Her electronic signature, as maintained by Rite-Aid #135, documents her receipt of that prescription, see attachment #4.  On August 1, 2007, attachments #3 and #4 were obtained by OSBP Compliance Supervisor Robert L. Cole from Rite-Aid #1351.

**Dispensing of the third false prescription**
On May 21, 2007, Clark-Ahwajee was dispensed prescription number 393333, attachment #5, from Rite-Aid Pharmacy #1351.  This prescription was authorized on May 17, 2007, by deception, by prescriber Robert S. Geiger for 28 dosage units of Avinza 30 mg [a 28-day supply].  The cost of this prescription was $111.99.  Additionally, the patient paid a five dollar co-pay.  This prescription, see attachment #5, was picked up and signed for by Clark-Ahwajee.  Her electronic signature, as maintained by Rite-Aid #135, documents her receipt of that prescription, see attachment #6.  On June 26, 2007, attachments #5 and #6 were obtained by CA Miksch from Rite-Aid #1351.

**Second deception by Clark-Ahwajee for a fourth prescription**
On May 22, 2007, Clark-Ahwajee and LPN Werner were talking on the telephone.  Clark-Ahwajee told Werner that "she could not find her Dilaudid prescription ... but, it was probably at work."  She then inquired if she needed to write-up a police report to get another prescription.  Werner advised that he would telephone her the next day to inquire if she had found her prescription.  If not, "I would print out a new one."

On May 23, 2007, Werner telephoned Clark-Ahwajee.  She told Werner that she had been unable to locate the prescription issued to her on May 17, 2007.  In fact, this particular prescription was dispensed to Clark-Ahwajee on May 17, 2007.

**Authorization of the fourth false prescription**
Based on Clark-Ahwajee's lie, Werner printed another prescription [393515], attachment #7, for 84 dosage units of hydromorphone.  Werner then presented the printed prescription to Dr. James Bressi for signature.  Bressi, assuming that the prescription had been authorized for the patient, signed the prescription on May 23, 2007.  After work that day, Werner delivered it to Rite Aid #1351 in Tallmadge, Ohio for dispensing to Clark Ahwajee.

This report may not be distributed without the express permission of the Board of Pharmacy's Assistant Executive Director

2007-1508
August 2, 2007
Page 3 of 9

On May 10, 2007, Clark-Ahwajee was dispensed prescription number 392440, attachment 13, from Rite-Aid Pharmacy #1351. This prescription was authorized by prescriber Anita Amlani for 30 dosage units of Ambien CR 12.5 mg [a 30 day supply]. The cost of this prescription was $129.99. Additionally, the patient paid a five dollar co-pay. On August 1, 2007, attachments #13 was obtained by OSBP Compliance Supervisor Robert L. Cole from Rite-Aid #1351.

On May 11, 2007, Clark-Ahwajee was dispensed prescription number 392469 from Rite-Aid Pharmacy #1351. This prescription was authorized by prescriber Steven D. Smith for 28 dosage units [a 7-day supply] of Tramadol 50 mg. The cost of this prescription was $17.98. Additionally, the patient paid a five dollar co-pay. This prescription has not been retrieved from the pharmacy.

**First Deception by Clark-Ahwajee**
On May 17, 2007, Clark-Ahwajee went to FPMC and spoke with LPN Werner. She told him that she had been authorized an increase in the drug quantities on her prescriptions from a 7-day supply to a 28-day supply. Werner made the assumption she was telling him the truth, when she had not. Werner violated FPMC Policy as he did not verify the prescription drug quantity change by reviewing her medical chart or speaking with a staff physician. Had he done so he would have discovered no such change had been authorized.

Instead, he produced from FPMC's computer system three prescriptions for Clark-Ahwajee:

- 84 dosage units of the C-II drug hydromorphone 2 mg;
- 28 dosage units of the C-II drug Avinza (morphine); and,
- 112 dosage units of the prescription drug Tramadol 50 mg.

**Authorization of three false prescriptions**
LPN Werner printed two prescriptions [hydromorphone 2mg and Avinza 30 mg] and gave them to Robert Geiger, M.D., for his signature. Geiger, assuming the prescription change had been authorized by another staff physician of FPMC, signed the illegal drug documents.

Werner then printed a third prescription [Tramadol] and gave it to James Bressi, D.O., for his signature. Bressi, assuming the prescription change had been authorized by another staff physician of FPMC, signed the illegal drug document.

Werner, in turn gave the three prescriptions to Clark-Ahwajee. Two of those prescriptions were dispensed on May 17, 2007. The remaining prescription was dispensed on May 21, 2007.

**Dispensing of the first and second false prescriptions**
On May 17, 2007, Clark-Ahwajee was dispensed prescription number 392984, attachment #1, from Rite-Aid Pharmacy #1351. This prescription was authorized, by

This report may not be distributed without the express permission of the Board of Pharmacy's Assistant Executive Director

2007-1508
August 2, 2007
Page 5 of 9

### Dispensing of the fourth false prescription

On May 23, 2007, Clark-Ahwajee was dispensed prescription number 393515 from Rite-Aid Pharmacy #1351. This prescription was authorized, by deception, by prescriber James P. Bressi for 84 dosage units of hydromorphone 2 mg [a 28-day supply]. The cost of this prescription was $50.98. Additionally, the patient paid a five dollar co-pay. This prescription was obtained by CA Miksch on June 26, 2007, see attachment #7. Her electronic signature, as maintained by Rite-Aid #135, documents her receipt of that prescription, see attachment #8. On June 26, 2007, attachments #7 and #8 were obtained by CA Miksch from Rite-Aid #1351.

Later that day, LPN Werner told another CFGH employee what he had done for Clark-Ahwajee. That employee, in turn, reported Werner's admissions to their supervisor.

On Tuesday, 5/24/07, LPN Werner was interviewed, at work, by CFGH employees: Director of Pharmacy Tom Bauer, RPh; Human Resource Director Heather Milicevic; and, Rick Hohan, Director of Rehabilitative Services. During that interview Werner admitted the following:

- He was aware that Clark-Ahwajee was known as a problem patient for the pain clinic, but he was not aware of the specific circumstances.
- On May 17, 2007 Clark-Ahwajee told him that her prescriptions were wrong and that they should have been written for a 28-day supply of drugs.
- He obtained 3 prescriptions for her that day, each for a 28-day drug supply.
- On May 22, 2007, he spoke with Clark-Ahwajee on the telephone. She told him she had lost her prescription and that it was probably in her locker at work.
- On May 23, 2007, he spoke with Clark-Ahwajee, and determined she had not found her lost prescription.
- He printed a new prescription, had a physician sign it, and took it to the Rite Aid Pharmacy in Tallmadge, Ohio.

On 5/24/07, CFGH Director of Rehabilitative Services Rick Hohan contacted Ohio State Board of Pharmacy [OSBP] Compliance Specialist (CS) L. R. [Bob] Mandi, RPh, concerning the prescriptions and the involvement of LPN Tom Werner and Stacy Clark-Ahwajee.

On May 29, 2007, Werner signed a handwritten notarized two-page statement [Attachment #9] reflecting his admissions made to CFMH officials on May 24, 2007.

On May 30, 2007, LPN Werner signed a one-page hand-written, notarized statement [Attachment #10] providing additional information concerning his actions.

On May 30, 2007, CS Mandi and OSBP Compliance Agent Tom Miksch met with Hohan, Milicevic, and RPh Bauer. During this meeting CS Mandi obtained background information regarding this matter. At that time CS Mandi was given LPN Werner's two handwritten statements [attachment #9 and #10] and a two-page copy of FPMC's prescription sign-out sheet documenting, by her signature, Stacy Clark-Ahwajee had received various prescriptions [Attachment #11].

This report may not be distributed without the express permission of the Board of Pharmacy's Assistant Executive Director

2007-1508
August 2, 2007
Page 6 of 9

The following prescriptions have been obtained by Clark-Ahwajee. The issuance of these prescriptions has not been investigated.

On June 15, 2007, Clark-Ahwajee was dispensed prescription number 395386, attachment #14, from Rite-Aid Pharmacy #1351. This prescription was authorized by prescriber Robert S. Geiger on June 4, 2007, for 15 dosage units of Avinza 30 mg [a 10-day supply]. The cost of this prescription was $78.99. Additionally, the patient paid a five dollar co-pay. On August 1, 2007, attachment #14 was obtained by OSBP Compliance Supervisor Robert L. Cole from Rite-Aid #1351.

On June 26, 2007, Clark-Ahwajee was dispensed prescription number 396309, attachment #15, from Rite-Aid Pharmacy #1351. This prescription was authorized by prescriber Anita Amlani, M.D., on June 26, 2007, for 50 dosage units of oxycodone 5/325 mg [a 12-day supply]. The cost of this prescription was $28.98. Additionally, the patient paid a five dollar co-pay. Dr Amlani is not associated with FCGH or FPMC. This prescription has not been retrieved from the pharmacy.

On July 5, 2007, Clark-Ahwajee was dispensed prescription number 396984, attachment #16, from Rite-Aid Pharmacy #1351. This prescription was authorized by prescriber Anita Amlani, M.D., on July 5, 2007, for 50 dosage units of oxycodone 5/325 mg [a 12-day supply]. The cost of this prescription was $28.98. Additionally, the patient paid a five dollar co-pay. On August 1, 2007, attachment #16 was obtained by OSBP Compliance Supervisor Robert L. Cole from Rite-Aid #1351.

On July 13, 2007, Clark-Ahwajee was dispensed prescription number 397640, attachment #17, from Rite-Aid Pharmacy #1351. This prescription was authorized by prescriber Anita Amlani, M.D., on July 13, 2007, for 50 dosage units of oxycodone 5/325 mg [a 12-day supply]. The cost of this prescription was $28.98. Additionally, the patient paid a five dollar co-pay. On August 1, 2007, attachment #17 was obtained by OSBP Compliance Supervisor Robert L. Cole from Rite-Aid #1351.

On July 20, 2007, Clark-Ahwajee was dispensed prescription number 398180, attachment #18, from Rite-Aid Pharmacy #1351. This prescription was authorized by prescriber Anita Amlani, M.D., on July 20, 2007, for 50 dosage units of oxycodone 5/325 mg [a 12-day supply]. The cost of this prescription was $28.98. Additionally, the patient paid a five dollar co-pay. On August 1, 2007, attachment #18 was obtained by OSBP Compliance Supervisor Robert L. Cole from Rite-Aid #1351.

On July 27, 2007, Clark-Ahwajee was dispensed prescription number 398714, attachment #19, from Rite-Aid Pharmacy #1351. This prescription was authorized by prescriber Anita Amlani, M.D., on July 27, 2007, for 50 dosage units of oxycodone 5/325 mg [a 12-day supply]. The cost of this prescription was $28.98. Additionally, the patient paid a five dollar co-pay. On August 1, 2007, attachment #19 was obtained by OSBP Compliance Supervisor Robert L. Cole from Rite-Aid #1351.

This report may not be distributed without the express permission of the Board of Pharmacy's Assistant Executive Director

2007-1508
August 2, 2007
Page 6 of 9

The following prescriptions have been obtained by Clark-Ahwajee. The issuance of these prescriptions has not been investigated.

On June 15, 2007, Clark-Ahwajee was dispensed prescription number 395386, attachment #14, from Rite-Aid Pharmacy #1351. This prescription was authorized by prescriber Robert S. Geiger on June 4, 2007, for 15 dosage units of Avinza 30 mg [a 10-day supply]. The cost of this prescription was $78.99. Additionally, the patient paid a five dollar co-pay. On August 1, 2007, attachment #14 was obtained by OSBP Compliance Supervisor Robert L. Cole from Rite-Aid #1351.

On June 26, 2007, Clark-Ahwajee was dispensed prescription number 396309, attachment #15, from Rite-Aid Pharmacy #1351. This prescription was authorized by prescriber Anita Amlani, M.D., on June 26, 2007, for 50 dosage units of oxycodone 5/325 mg [a 12-day supply]. The cost of this prescription was $28.98. Additionally, the patient paid a five dollar co-pay. Dr Amlani is not associated with FCGH or FPMC. This prescription has not been retrieved from the pharmacy.

On July 5, 2007, Clark-Ahwajee was dispensed prescription number 396984, attachment #16, from Rite-Aid Pharmacy #1351. This prescription was authorized by prescriber Anita Amlani, M.D., on July 5, 2007, for 50 dosage units of oxycodone 5/325 mg [a 12-day supply]. The cost of this prescription was $28.98. Additionally, the patient paid a five dollar co-pay. On August 1, 2007, attachment #16 was obtained by OSBP Compliance Supervisor Robert L. Cole from Rite-Aid #1351.

On July 13, 2007, Clark-Ahwajee was dispensed prescription number 397640, attachment #17, from Rite-Aid Pharmacy #1351. This prescription was authorized by prescriber Anita Amlani, M.D., on July 13, 2007, for 50 dosage units of oxycodone 5/325 mg [a 12-day supply]. The cost of this prescription was $28.98. Additionally, the patient paid a five dollar co-pay. On August 1, 2007, attachment #17 was obtained by OSBP Compliance Supervisor Robert L. Cole from Rite-Aid #1351.

On July 20, 2007, Clark-Ahwajee was dispensed prescription number 398180, attachment #18, from Rite-Aid Pharmacy #1351. This prescription was authorized by prescriber Anita Amlani, M.D., on July 20, 2007, for 50 dosage units of oxycodone 5/325 mg [a 12-day supply]. The cost of this prescription was $28.98. Additionally, the patient paid a five dollar co-pay. On August 1, 2007, attachment #18 was obtained by OSBP Compliance Supervisor Robert L. Cole from Rite-Aid #1351.

On July 27, 2007, Clark-Ahwajee was dispensed prescription number 398714, attachment #19, from Rite-Aid Pharmacy #1351. This prescription was authorized by prescriber Anita Amlani, M.D., on July 27, 2007, for 50 dosage units of oxycodone 5/325 mg [a 12-day supply]. The cost of this prescription was $28.98. Additionally, the patient paid a five dollar co-pay. On August 1, 2007, attachment #19 was obtained by OSBP Compliance Supervisor Robert L. Cole from Rite-Aid #1351.

This report may not be distributed without the express permission of the Board of Pharmacy's Assistant Executive Director

001903

2007-1508
August 2, 2007
Page 5 of 9

**Dispensing of the fourth false prescription**
On May 23, 2007, Clark-Ahwajee was dispensed prescription number 393515 from Rite-Aid Pharmacy #1351. This prescription was authorized, by deception, by prescriber James P. Bressi for 84 dosage units of hydromorphone 2 mg [a 28-day supply]. The cost of this prescription was $50.98. Additionally, the patient paid a five dollar co-pay. This prescription was obtained by CA Miksch on June 26, 2007, see attachment #7. Her electronic signature, as maintained by Rite-Aid #135, documents her receipt of that prescription, see attachment #8. On June 26, 2007, attachments #7 and #8 were obtained by CA Miksch from Rite-Aid #1351.

Later that day, LPN Werner told another CFGH employee what he had done for Clark-Ahwajee. That employee, in turn, reported Werner's admissions to their supervisor.

On Tuesday, 5/24/07, LPN Werner was interviewed, at work, by CFGH employees: Director of Pharmacy Tom Bauer, RPh; Human Resource Director Heather Milicevic; and, Rick Hohan, Director of Rehabilitative Services.   During that interview Werner admitted the following:
- He was aware that Clark-Ahwajee was known as a problem patient for the pain clinic, but he was not aware of the specific circumstances.
- On May 17, 2007 Clark-Ahwajee told him that her prescriptions were wrong and that they should have been written for a 28-day supply of drugs.
- He obtained 3 prescriptions for her that day, each for a 28-day drug supply.
- On May 22, 2007, he spoke with Clark-Ahwajee on the telephone. She told him she had lost her prescription and that it was probably in her locker at work.
- On May 23, 2007, he spoke with Clark-Ahwajee, and determined she had not found her lost prescription.
- He printed a new prescription, had a physician sign it, and took it to the Rite Aid Pharmacy in Tallmadge, Ohio.

On 5/24/07, CFGH Director of Rehabilitative Services Rick Hohan contacted Ohio State Board of Pharmacy [OSBP] Compliance Specialist (CS) L. R. [Bob] Mandi, RPh, concerning the prescriptions and the involvement of LPN Tom Werner and Stacy Clark-Ahwajee.

On May 29, 2007, Werner signed a handwritten notarized two-page statement [Attachment #9] reflecting his admissions made to CFMH officials on May 24, 2007.

On May 30, 2007, LPN Werner signed a one-page hand-written, notarized statement [Attachment #10] providing additional information concerning his actions.

On May 30, 2007, CS Mandi and OSBP Compliance Agent Tom Miksch met with Hohan, Milicevic, and RPh Bauer. During this meeting CS Mandi obtained background information regarding this matter. At that time CS Mandi was given LPN Werner's two handwritten statements [attachment #9 and #10] and a two-page copy of FPMC's prescription sign-out sheet documenting, by her signature,  Stacy Clark-Ahwajee had received various prescriptions [Attachment #11].

This report may not be distributed without the express permission of the Board of Pharmacy's Assistant Executive Director

2007-1508
August 2, 2007
Page 7 of 9

Further investigative details will be reported.

**Suspect:**          Stacy R. Clark-Ahwajee (aka Stacy R. Clark-Ahwajee)
                      SSN: 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   DOB: 02-01-70
                      Current:   1028 Northeast Avenue
                                 Tallmadge, OH   44278-1136
                                 (330) 633-0758
                      Previous:  853 Beechwood Drive
                                 Tallmadge, OH   44278-2574
                                 (330) 634-0489

**Associate:**        Thomas C. Werner, Jr.
                      LPN – OH #PN105311
                      SSN: 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
                      DOB: 03-29-55
                      Current:   1096 Stinard Avenue
                                 Akron, OH   44312
                                 (330)801-0191  Cell

The following are potential criminal charges for consideration against Stacy Clark-Ahwajee.

Count 1 (F-4):
     ORC 2925.22          Deception to Obtain a Dangerous Drug, to wit, 84
                          hydromorphone 2mg tablets on May 17, 2007 pursuant to
                          prescription number 392984. Hydromorphone is a C-II
                          Controlled Substance. The bulk amount of this drug is 60
                          tablets.

Count 2 (F-4):
     ORC 2925.22          Deception to Obtain a Dangerous Drug, to wit, 28 capsules of
                          Avinza 30mg on May 17, 2007 pursuant to prescription
                          number 393333. Avinza is the trade name of morphine
                          sulfate, a C-II Controlled Substance. The bulk amount of this
                          drug is 30 dosage units.

Count 3 (F-4):
     ORC 2925.22          Deception to Obtain a Dangerous Drug, to wit, 84
                          hydromorphone 2mg tablets on May 23, 2007 pursuant to
                          prescription number 393515. Hydromorphone is a C-II
                          Controlled Substance. The bulk amount of this drug is 60
                          tablets.

This report may not be distributed without the express permission of the Board of Pharmacy's Assistant Executive Director

2007-1508
August 2, 2007
Page 8 of 9

**Count 5 (F-4):**
ORC 2925.23    Illegal Processing of a Drug Document, to wit, on May 17, knowingly possessed and uttered a false prescription, number 392984, for 84 tablets of hydromorphone 2mg, a C-II Controlled Substance.

**Count 6 (F-5):**
ORC 2925.23    Illegal Processing of a Drug Document, to wit, On May 17, 2007, knowingly possessed and uttered a false prescription, number 393017, for 112 tablets of Tramadol 50 mg, a Dangerous Drug.

**Count 7 (F-4):**
ORC 2925.23    Illegal Processing of a Drug Document, to wit, on May 21, knowingly uttered a false prescription, number 393333, for 30 capsules of morphine sulfate 30mg, a C-II Controlled Substance.

**Count 8 (F-4):**
ORC 2925.23    Illegal Processing of a Drug Document, to wit, on May 23, knowingly possessed and uttered a false prescription, number 393515, for 84 tablets of hydromorphone 2mg, a C-II Controlled Substance.

**Count 9 (F-3):**
ORC 2925.03    Illegal Possession of a Controlled Substance, to wit, 84 hydromorphone 2mg tablets on May 17, 2007 pursuant to prescription number 392984. Hydromorphone is a C-II Controlled Substance. The bulk amount of this drug is 60 tablets.

**Count 10 (F-5):**
ORC 2925.11    Illegal Possession of a Controlled Substance, to wit, 28 capsules of Avinza 30mg on May 21, 2007 pursuant to prescription number 393333. Avinza is the trade name of morphine sulfate, a C-II Controlled Substance. The bulk amount of this drug is 30 dosage units.

**Count 11 (F-3):**
ORC 2925.03    Illegal Possession of a Controlled Substance, to wit, 84 hydromorphone 2mg tablets on May 23, 2007 pursuant to prescription number 393515. Hydromorphone is a C-II Controlled Substance. The bulk amount of this drug is 60 tablets.

This report may not be distributed without the express permission of the Board of Pharmacy's Assistant Executive Director

2007-1508
August 2, 2007
Page 8 of 9

**Count 5 (F-4):**
ORC 2925.23

Illegal Processing of a Drug Document, to wit, on May 17, knowingly possessed and uttered a false prescription, number 392984, for 84 tablets of hydromorphone 2mg, a C-II Controlled Substance.

**Count 6 (F-5):**
ORC 2925.23

Illegal Processing of a Drug Document, to wit, On May 17, 2007, knowingly possessed and uttered a false prescription, number 393017, for 112 tablets of Tramadol 50 mg, a Dangerous Drug.

**Count 7 (F-4):**
ORC 2925.23

Illegal Processing of a Drug Document, to wit, on May 21, knowingly uttered a false prescription, number 393333, for 30 capsules of morphine sulfate 30mg, a C-II Controlled Substance.

**Count 8 (F-4):**
ORC 2925.23

Illegal Processing of a Drug Document, to wit, on May 23, knowingly possessed and uttered a false prescription, number 393515, for 84 tablets of hydromorphone 2mg, a C-II Controlled Substance.

**Count 9 (F-3):**
ORC 2925.03

Illegal Possession of a Controlled Substance, to wit, 84 hydromorphone 2mg tablets on May 17, 2007 pursuant to prescription number 392984.  Hydromorphone is a C-II Controlled Substance.  The bulk amount of this drug is 60 tablets.

**Count 10 (F-5):**
ORC 2925.11

Illegal Possession of a Controlled Substance, to wit, 28 capsules of Avinza 30mg on May 21, 2007 pursuant to prescription number 393333.  Avinza is the trade name of morphine sulfate, a C-II Controlled Substance.  The bulk amount of this drug is 30 dosage units.

**Count 11 (F-3):**
ORC 2925.03

Illegal Possession of a Controlled Substance, to wit, 84 hydromorphone 2mg tablets on May 23, 2007 pursuant to prescription number 393515.  Hydromorphone is a C-II Controlled Substance.  The bulk amount of this drug is 60 tablets.

This report may not be distributed without the express permission of the Board of Pharmacy's Assistant Executive Director

2007-1508
August 2, 2007
Page 7 of 9

Further investigative details will be reported.

**Suspect:**            Stacy R. Clark-Ahwajee (aka Stacy R. Clark-Ahwajee)
                        SSN: 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  DOB: 02-01-70
                        Current:   1028 Northeast Avenue
                                   Tallmadge, OH   44278-1136
                                   (330) 633-0758
                        Previous:  853 Beechwood Drive
                                   Tallmadge, OH   44278-2574
                                   (330) 634-0489

**Associate:**          Thomas C. Werner, Jr.
                        LPN – OH #PN105311
                        SSN: 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
                        DOB: 03-29-55
                        Current:   1096 Stinard Avenue
                                   Akron, OH   44312
                                   (330)801-0191  Cell

The following are potential criminal charges for consideration against Stacy Clark-Ahwajee.

Count 1 (F-4):
    ORC 2925.22    Deception to Obtain a Dangerous Drug, to wit, 84
                   hydromorphone 2mg tablets on May 17, 2007 pursuant to
                   prescription number 392984.  Hydromorphone is a C-II
                   Controlled Substance.  The bulk amount of this drug is 60
                   tablets.

Count 2 (F-4):
    ORC 2925.22    Deception to Obtain a Dangerous Drug, to wit, 28 capsules of
                   Avinza 30mg on May 17, 2007 pursuant to prescription
                   number 393333.  Avinza is the trade name of morphine
                   sulfate, a C-II Controlled Substance.  The bulk amount of this
                   drug is 30 dosage units.

Count 3 (F-4):
    ORC 2925.22    Deception to Obtain a Dangerous Drug, to wit, 84
                   hydromorphone 2mg tablets on May 23, 2007 pursuant to
                   prescription number 393515.  Hydromorphone is a C-II
                   Controlled Substance.  The bulk amount of this drug is 60
                   tablets.

This report may not be distributed without the express permission of the Board of Pharmacy's Assistant Executive Director

2007-1508
August 2, 2007
Page 9 of 9

Count 12 (M-1):
ORC 4729.51    Illegal Possession of a Dangerous Drug, to wit, 112 tablets of
Tramadol 50mg on May 17, 2007 pursuant to prescription
number 393017.  Tramadol is a C-II dangerous drug.

Count 13
ORC 2913.02    Theft in Office

**Attachments:**
Attachment # 1:    Rx # 392984
Attachment # 2:    Signature of Stacy Clark-Ahwajee for dispensing of attachment #1
Attachment # 3:    Rx # 393017
Attachment # 4:    Signature of Stacy Clark-Ahwajee for dispensing of attachment #3
Attachment # 5:    Rx # 393333
Attachment # 6:    Signature of Stacy Clark-Ahwajee for dispensing of attachment #5
Attachment # 7:    Rx # 393515
Attachment # 8:    Signature of Stacy Clark-Ahwajee for dispensing of attachment #7
Attachment # 9:    Two page statement of LPN Thomas Werner
Attachment #10:    One page statement of LPN Thomas Werner
Attachment #11:    Copy of 2 pages of FPMC signature logs of Stacy Clark-Ahwajee
Attachment #12:    Rite-Aid # 1351 profile for Stacy Clark-Ahwajee
Attachment #13:    Rx # 392440
Attachment #14:    Rx # 395386
Attachment #15:    Copy of Rx # 396309
Attachment #16:    Rx # 396984
Attachment #17:    Rx # 397640
Attachment #18:    Rx # 398180
Attachment #19:    Rx # 398714

Respectfully submitted,

*Robert L. Cole*
Robert L. Cole
Compliance Supervisor

This report may not be distributed without the express permission of the Board of Pharmacy's Assistant Executive Director

001909

Attachment # 1 & 2

OHIO STATE BOARD OF PHARMACY
77 S. High Street, Room 1702
Columbus, Ohio 43215-6126
614-466-4143

REPORT OF INVESTIGATION

CASE NO.:        2007-1508                                ROI - 2 Close 15

REPORT DATE:    October 15, 2007

REPORT BY:      Thomas Miksch
                Compliance Agent

FILE NAME:      Stacy R. Clark-Ahwajee
                aka Stacy Clark

TYPE OF INCIDENT:   Trafficking in Drugs, ORC 2925.03
                    Deception to Obtain a Dangerous Drug, ORC 2925.22
                    Illegal Drug Possession, ORC 2925.11

LOCATION OF INCIDENT:  Summit County, Ohio

Investigation:

This case was originally assigned to C/S L.R. Mandi, then later re-assigned to C/A
Miksch.

On August 6, 2007, C/A T. Miksch was contacted by Keith Thornton, Chief Inspector
for the Summit County Sheriff's Department, regarding Stacy Clark-Ahwajee. Thornton
told Miksch that Clark-Ahwajee (who will be identified in this report as Stacy Clark or
just Clark), was just in the Sheriff's Office and had told them that because of some
health issues would probably need to be taking some time off. At that time, Thornton
told Clark that she was under investigation for the incident where she obtained
prescriptions at the Cuyahoga Falls Pain Management Center inside the Cuyahoga Falls
General Hospital, from Thomas Werner LPN, under what appeared to be fraudulent

2007-1508
October 15, 2007
Page 2 of 11

circumstances. Thornton asked if Miksch could interview Clark this date with the assistance of Lt. Rich Paolucci of the SCSO.

Continued investigation: Interview of Summit County Deputy Stacy Clark

The interview took place in the office of Inspector Keith Thornton. During the interview, Thornton and Steve Finical, who is in charge of personnel matters for the SCSO, were present for parts of the interview, but did not take any part in the questioning. (*Note-The interview was digitally recorded by C/A Miksch, then later burned to a CD-R and is in Miksch's possession). The interview began at approximately 11:45 AM and finished at approx. 1:00 PM.

Clark knew Lt. Paolucci, and knew Miksch from previous contacts with her. She understood, because she had been told previously by Thornton, that she was being investigated for her conduct at the Falls Pain Management Center. She said that she was no longer a patient there after having been terminated from the practice by Dr. Robert Geiger. Miksch told her that OSBP had obtained a statement from Mr. Werner, an LPN at Falls Pain Management Center (from here on designated as FPMC), and she asked if that was "Tom." She apparently didn't know Werner's last name.

She said that she had started going to the FPMC in 2003 or 2004 and had been getting prescriptions for pain medications from them, including Avinza, Ultram and Hydromorphone. During the birth of a son, she had a C-section performed, and the epidural that they gave her caused nerve damage, which has caused pain ever since. She has suffered from sciatica, with pain running down both legs and causing her knees to buckle periodically. She said that after the pain began, she went through a year of tests, including MRI's and Cat scans. She also tried physical therapy for about nine (9) months and also saw a chiropractor. She also went to an orthopedic doctor at the Omni Center in Canton, Ohio, and was told that there was nothing more he could do for her, so she was referred to FPMC. Surgery had been an option but would have been a last resort, and she declined to have surgery.

While going to FPMC she saw both Dr's Bressi and Geiger, and at times saw a Physician's Assistant. They tried nerve blocks and the use of a Tens Unit, but that

2007-1508
October 15, 2007
Page 3 of 11

didn't seem to work. She was given pain medicine prescriptions, starting with Vicodin, but it became ineffective and was eventually switched to Percocet, along with Ultram and Soma. Around January of 2007 her pain meds were switched to Hydromorphone and Avinza.

At some point in time, she was being monitored by FPMC with urine tests. She said that all of them were OK except for one that she took in January of 2007. (*Note-FPMC records reflect that the test she was describing actually happened December 2006). She said that she was in a hurry to get to work when she stopped at FPMC and was told that she needed to provide a urine sample for a test. She said that she had a "shy bladder", and that she was unable to give a sample. She said that she asked if they could take a blood sample for the test instead of urine, and was told that it had to be urine. They allowed her to return the next day and drop a urine sample, which she did. The subsequent test of the urine showed positive for Hydrocodone, which FPMC wasn't prescribing for her. She said that the reason that the test was positive was because she had a Vicodin left over from an old prescription, and took it the night before the urine sample was given, because she was unable to give the urine test right away, they wouldn't refill her pain med prescriptions. Because using a controlled substance not prescribed by FPMC violated a contract that she had previously signed, she was sent to a psychiatrist or a mental health counselor of some sort for an evaluation. She said that the persons' name was Dr. Sipps, and he is affiliated with FPMC. She said that she completed the necessary visits to this doctor, and then was allowed to return as a patient to the FPMC. At this point, C/A Miksch asked Clark if she would sign a release for her medical records and she agreed to and did sign the release. (See attachment #1 for copy of release form signed by Clark).

Since being released from the FPMC she is now seeing a Dr. Amlani in Tallmadge, OH for her pain meds. Amlani was her primary care physician while going to FPMC. She is receiving weekly prescriptions for Percocet because she is trying to get into another pain management facility and the doctor doesn't want her to have too many meds if she gets into a pain management center. She is also receiving prescriptions for Ambien to help her sleep. She is going through what she describes as a nasty divorce and is having trouble sleeping which is why she is receiving the Ambien.

2007-1508
October 15, 2007
Page 4 of 11

She was asked about her relationship with Thomas Werner LPN while going to FPMC. She said that she thought that he was a nurse there. He did IV's, took blood pressure, weighed patients, etc. He was aware that she was getting a divorce and asked her one time if she wanted to get some coffee but she declined because she was not yet divorced. She did however give him her phone number. She denied ever seeing him outside of FPMC. She thought of their relationship as a friendship.

Clark was advised that Werner had said in a statement that on the day in question, 5-17-07, Stacy had told him that her quantities on her prescriptions had been increased from a 7 day supply to a 28 day supply and at first she said that she didn't know what Werner was talking about. But later she did say that the prescriptions that she had just gotten were for a 7 day supply only when she had been receiving 28 day supply prescriptions. She said that while she had to meet with Dr. Sipps regarding her dirty urine test, she was placed on a 7 day supply only. Getting a week supply of meds is more expensive that getting a months worth of meds so she asked for and started receiving 28 day supply prescriptions.

She said that during the 5-17-07 visit to pick up her prescriptions, when she looked at them she realized that they were for a 7 day supply only and so she advised the lady behind the counter of the mistake. The lady told her that there was nothing that she could do about it and that Clark would have to talk with a doctor about the problem. At that time, Werner walked out to where Clark was and struck up a conversation with her. Clark told Werner that an error had been made on the quantity of her prescriptions, and was basically "complaining about it but it wasn't a huge issue." and Werner took them and told her that he would take care of it. A short time later, Werner gave her new prescriptions which she assumed that he got ok'd by one of the doctors. She then had her prescriptions filled at the Rite Aid Pharmacy in Tallmadge, OH.

Sometime after getting the prescriptions filled, she lost the Hydromorphone tablets. She realized after going to work on 5-21-07, that she didn't have them, and advised her supervisor (Sgt. French) that her pills were gone. She knew that she had the pills that morning but they were gone by the time she got to work and had no idea what happened to them. She re-traced her steps back to her car and looked in the car and the street, and later looked in her locker, but couldn't find them. She then went home

2007-1508
October 15, 2007
Page 5 of 11

to look for them but was unsuccessful. While at home, Werner happened to call her, and she told him about the lost Hydromorphone tablets. She advised Werner that she had reported this to her supervisor and Werner told her to contact him if she couldn't find them. She then returned to work. The next day she looked through her trash at home thinking that she might have thrown the pills out accidentally with some papers, but she still couldn't find them. Werner called her again and she advised him that the pills were not found and he told her that he'd get another prescription for her and leave it at the front desk. She said that she asked Werner if she needed a police report and he told her that he didn't and that he'd take care of it. The next day, Werner called her and told her that the prescription was at the front desk at FPMC. She asked Werner what time that they closed and when he said 6:00 PM, she told him that she wouldn't be able to make it in time. Werner then agreed to drop it off at whatever pharmacy she wanted it taken to and she told him that she fills them at the Rite Aid in Tallmadge, OH. Werner took it to the pharmacy because it was there when she went there after work the same day. Later she was contacted by someone from the FPMC and was told that she was being dismissed from there as a patient, and that they would give her some "wean down meds." She asked if there was an appeal process and was told that she could write a letter to them explaining her side of the story. She then spoke with Dr. Sipps who told her that he thought that Dr. Geiger was reasonable, but that he (Sipps) couldn't continue to treat her with hypnosis unless she was allowed back at FPMC. Clark said that she never heard back from Dr. Geiger regarding her appeal, so she began going to her family physician (Dr. Amlani) for pain meds. Amlani was going to refer her to the pain clinic in Kent, OH, and in the meantime would only prescribe pain meds to her a week at a time.

Clark again denied that she told Werner that the doctor at FPMC had just increased her meds from a 7 day to a 28 day supply, because she had been receiving a 28 day supply for several months (true). Of the three prescriptions that she normally got, two of them were a 28 day supply but they never changed the third one to a 28 day supply along with the other two.

She said that Dr. Amlani prescribes Percocet for her and Miksch is aware that she gets a 12 day supply. (Qty. #50 with directions to take 1 every 6 hours.) She admitted that some days she uses more than four pills a day because she needs more to control the

2007-1508
October 15, 2007
Page 6 of 11

pain. She then agreed that if she used up 50 pills in 7 days then she must be using 7 pills a day.

Miksch asked her if she would consider herself a problem patient while going to FPMC and she said that she didn't think so, and that if she was, no one there ever said anything to her about it.

Miksch asked her if it was possible that Werner was expecting something from her for getting her the prescriptions and she answered that she found the question offensive.

Clark said that she was mad at herself for not filling out a police report regarding the lost pills, and mad at Werner.

Miksch asked her if she had a drug problem and she didn't answer the question directly, but did say that the pills aren't doing the job that they are supposed to. She further stated that she really would prefer to not use pain medication, and that the quality of her life had gone down hill. She said that she didn't have time to deal with the pain. She then informed C/A Miksch and Lt. Paolucci that she was diagnosed two weeks prior by a Dr. Nash and Akron City Hospital, with a tumor on her pituitary gland, and wondered if any medication that she was taking could have caused it.

The interview was concluded at approximately 1:00 PM.

Continued investigation:   Interview of Thomas Werner Jr. LPN

C/A Miksch spoke with Thomas Werner by phone and explained that he would like to interview him.  Werner agreed and met with C/A Miksch and Summit County Sheriff's Lt. R. Paolucci at the Summit County Sheriff's Office on 8-13-07 at approximately 11:30 AM. (*Note–The interview was digitally recorded by C/A Miksch, then later burned to a CD-R which is in Miksch's possession). The following is a synopsis of the interview which lasted approximately one hour:

Thomas Werner is a licensed practical nurse in Ohio. He was originally licensed in the state of Washington, and then later, through reciprocity became licensed in Ohio. He

2007-1508
October 15, 2007
Page 7 of 11

has been licensed for about 14 years. He presently works for ATC Health Care Service in Cleveland, OH, but prior to that he worked at the Falls Pain Management Center inside the Cuyahoga Falls General Hospital. He started there as a part time worker in November of 2003 and became full time in March of 2007. His duties there were to bring patients from the waiting room to the rear area where they were seen as patients, he took their history and vital signs, assisted with monitoring the patients while they were sedated, and printed out prescriptions for patients then took them to the physicians to be signed.

It was explained to Werner that this interview was in regards to Stacy Clark. He said that he met her at the Falls Pain Management Center when she was a patient. He met her when she was having a procedure done on "the procedure side." He described their relationship as patient/caregiver. They were acquaintances but not really friends. She was married but going through a divorce at the time. He knew that she was a Summit County Deputy. He said that the day of the "incident", (5-17-07), as she was walking out the door, he asked her if she was still married, and she told him that her divorce would be final August 3rd. When she asked why he wanted to know, he told her that he was going to ask her for her phone number so that they could go out and get a cup of coffee. Clark did give Werner her phone number and he ended up calling her a few days later. When he called her he asked her to go out for coffee, but they didn't go. He said that he had a few phone conversations with her. Clark had Werner's phone number also and he said that she called him once or twice, just to talk. He said that later, on May 29, 2007, the day that he resigned from FPMC, he spoke with her by phone and told her that he resigned. She seemed upset by this news. He asked her about whether or not she was doing something illegal with prescriptions, or if she had filled more than one prescription, and she said that she had not. He then asked her again if she wanted to go out for coffee, and she agreed. The following week, on a Thursday, they met for lunch at a restaurant in Tallmadge. This would have been in June. The restaurant was chosen by Clark. The conversation was casual, but Clark told him at lunch that she had been terminated from FPMC. The following week he had a couple more phone conversations and they were supposed to meet again the following weekend. He called her every day the next week and left voice mails but she never returned any of his calls. After not hearing back from her he deleted her numbers from his cell phone and never had another conversation with her.

2007-1508
October 15, 2007
Page 8 of 11

Miksch then asked Werner about the May 17, 2007 incident at FPMC. Werner said that he walked a patient out to the waiting room and saw Clark there. They had a conversation and she told him that she just picked up some prescriptions but that they wrote them wrong. She said that she was on 28 day prescriptions and they filled them for 7 days. She showed the prescriptions to him. She told him that now she was going to have to wait in line again to get the correct prescriptions, at which time he told her that he would give her monthly prescriptions instead. He thought that there were 3 prescriptions total. He thought that one Rx was for Dilaudid, one for a muscle relaxer, and the third he couldn't remember. He took her prescriptions and tore them up then he printed out the prescriptions for a month supply. When he tried to print them out, the printer messed up so he had to reprint them to another printer. He had the Rx's signed by the doctor, and then gave them to her. He did not have a conversation with the prescriber about whether or not she was supposed to get a month supply of these drugs, and may have looked at the chart briefly, but he wasn't sure. (*Note-Inside the front cover of the chart was a large note that said to not give Clark early refills). He said that the protocol was that if there was a change in a patients' prescription schedule, that it would have to be noted in the chart. He said that because she was a deputy, he took her at her word. He found out later that she had an appointment that day and wasn't just in there to pick up her refills. However, he said that if she had an appointment that day, it would be odd that she would have picked up her prescriptions at the window rather than from in the back.

Werner said that a couple days after May 17, 2007, either he called her or she called him and she told him that she lost one of her prescriptions. She told him that she had all three of the prescriptions in her locker, and she couldn't find one of them. He assumed that she was talking about the written prescriptions because he didn't think that she was allowed to take the actual medication to work with her. He found out from her a couple days later that it was the pills, not the paper prescription that was lost. She asked him if she should tell someone at the clinic that she lost it or what should she do. She asked him if she needed to make a police report and he thought that she would only need a report if the drugs were stolen, not just lost. He said that he told her at that time that she had been in trouble at the clinic before, and that this could get her in a lot of trouble. Then he told her that he would do her a favor, and print out one

2007-1508
October 15, 2007
Page 9 of 11

more prescription for her, but that if the "lost" prescription showed up, that she couldn't fill the one he re-issued to her, and she agreed. The next day he did re-print another prescription for her. He thought that it was for Avinza but wasn't sure. When asked what he meant when he said that he was aware that she had been in trouble at FPMC before, he explained that he thought that she had been running out of medication early. In other words she was taking the pills more often than prescribed. She had been warned about this at FPMC. He asked her sometime later about getting prescriptions early and she told him that she ran out early because she was stressed out from her divorce that she was going through.

Werner was asked if he ever took any prescriptions to a pharmacy for Clark and he answered that he took the "re-issued lost" prescription to a pharmacy for her. She suggested that they meet later that night and could get the prescription from him but it would have been later in the evening, and since he got off early that day, he didn't want to have to go back out. So he agreed to drop it off for her. She asked him to take it to the Rite Aid off Tallmadge Circle for her. He dropped it off and assumed that she picked up the filled prescription.

When asked if she had ever had any problems with her drug screens, he answered "no", but also said that he didn't look at her chart. He did remember one time when she was in for a test and couldn't give urine and he asked her if the test would come back clean and she answered that it would. He thought that the test came back clean, and said that he saw the report. When asked if he was aware that on the inside cover of her chart there was a note that she was not to get any early refills, he answered that he wasn't. When Miksch told him that she was supposed to get 7 day prescriptions, not a month supply, he said that he didn't know that until after the fact when he met with management and they told him.

A few days later, he started feeling guilty because he "didn't follow protocol", and he spoke with a physician's assistant named Heather at FPMC about it. Heather told him that she couldn't believe that he did that. He was called in on 5-29-07 to give a written statement, which he did. He said that he actually gave two statements. Miksch showed him a copy and he identified the signature on it as being his. He was then shown a second written statement that he gave dated May 30, 2007, and he said that it

2007-1508
October 15, 2007
Page 10 of 11


was his statement but actually gave it on the 29th too, not the 30th. He said that after the first statement, he was asked to give some more information, which he did. He was asked to read the statements out loud, which he did.

When he was asked about what he thought about this whole situation, he said "I fucked up." When asked to clarify if he was talking about the first time he gave her the month supply prescriptions or the re-issued "lost" prescription, he answered "all time." He said that he shouldn't have issued the month supply prescriptions to her and should have let the other employees handle it (the ones that handle the prescriptions). He said that he was trying to do her a favor and "was looking at this cute little deputy sheriff and maybe get a date with."

The interview was concluded at approximately 12:25 PM.

Continued investigation:    Decision made to not pursue prosecution

After this investigation was complete, Lt. Paolucci of the Summit County Sheriff's Department briefed the Summit County Sheriff regarding what was learned. A decision was made to handle this case as administrative matter, and to not pursue criminal charges.

Based on this information, this report will be Closed-15-Prosecution Declined.

Suspect:
    Stacy R. Clark, aka Stacy Clark-Ahwajee
    DOB 2-1-70
    SSN 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
    She is a white female, employed as a deputy with the Summit County S.O.
    <u>Residence</u>:
    853 Beechwood Drive
    Tallmadge, OH 44278
    <u>Telephone</u>:
    (330) 634-0489