CARDFILE.CRD

> Pawn shops
> Als Ohio-762-1001 — 680 Market St.
> Sydmors-753-6812 — 131 2nd St. NW
> Ounce of Gold-773-8766
> Northcoast-762-6575
> Pawn Brokers of America-762-7296 — N. Main
> A&A-784-3587
>
> Sam's Emporium - exchange

Page 1



002165

Leslie    C.M 1/22
    8584294
Aaron McGhee - 8146420 - mailbox full 1/21
PUGH'S  9625851

Stacy Clark
631-5996
Verizon

Stacy's
✓ - Attendance Records
Ed had Boys All week
Stacy Called off to Care for Kids
Eddie Broke his arm on 7/5th
+ Ed had Kids Remainder of
7/ Week.

002166

**SUMMIT COUNTY SHERIFF'S OFFICE**
**SHERIFF DREW ALEXANDER**
**CONFIDENTIAL INVESTIGATION**

INCIDENT REPORT NO.
Internal Investigation

FROM: Lt. Richard Paolucci

DATE OF INCIDENT: January 11, 2010

TO: Sheriff Alexander, Chief Moneypenny, Chief Thornton and Personnel

DATE INVESTIGATED: January 15, 2010

SUBJECT: Dep. S. Clark- Stolen weapon

ARRESTS: N/A

PLACE OF OCCURRENCE:
853 Beechwood Drive
Tallmadge, Ohio 44278

**SYNOPSIS:**

On January 15, 2010, I was assigned an internal investigation in regards to an allegation that Deputy Stacy Clark had her duty weapon stolen and did not report the theft. It was further alleged that an acquaintance of Deputy Clark, a Mr. Aaron McGhee, was a possible suspect in the theft and that her weapon was possibly used in a bank robbery that took place on the morning of the theft in the City of Akron.

Pursuant to this investigation, it was determined that Aaron McGhee was not a suspect in the bank robbery. It was further determined that Deputy Clark did in fact have her weapon stolen, however it was not used in the bank robbery and was ultimately returned to her the following day.

Through her own statements, Deputy Clark admitted that her weapon, a 9 MM Beretta Semiautomatic handgun, was stolen and she did not take the proper steps in notifying her supervisor or any representative of the Summit County Sheriff's Office. She also admits that she did not notify her local law-enforcement agency (Tallmadge Police) until a day and half later when they responded to her residence on an unrelated call. Deputy Clark further admitted that she reported for duty at the Summit County Jail without having her weapon available to her and that the said weapon was not properly secured at her residence.

See the end of this report for the detailed Rules and Regulations violations.

PAGE 1 OF 13
Form IB-1005-A
Revised 6/6/97

BY: LT. R.P. -0172    DATE: 3/9/10

002167

**SUMMIT COUNTY SHERIFF'S OFFICE**
**SHERIFF DREW ALEXANDER**
**CONFIDENTIAL INVESTIGATION**

**ACTION TAKEN:**

On **January 15, 2010**, at approximately 1100 hours, I was contacted by Lt. Frank Kalapodis via telephone. He advised that he was approached by a deputy who alleges that Deputy Stacy Clark had recently contacted the Akron Police Department inquiring about a bank robbery that had occurred and expressed concern because she recently had her weapon stolen from her residence. I advised Lt. Kalapodis to have the deputy submit a confidential report with the information and forward it to my attention.

On **January 15, 2010**, at approximately 1530 hours, I received two confidential investigation reports. One was from Deputy Nancy Mundy and the other from Deputy Deglagus Bradford. (See attached)

On **January 19, 2010**, I contacted the Akron Police Department Detective Bureau and spoke with Detective Bertina King. She supplied the following information:

### INTERVIEW

**Detective Bertina King**
**Akron Police Department**
**(330) 375-2490**

Detective King confirmed that she had received a phone call on Monday, January 11, 2010, prior to 1100 hours. The caller identified herself as Deputy Stacy Clark from the Summit County Sheriff's Office and was inquiring about a bank robbery that had just occurred that morning between the hours of 0900 and 1000 hours. According to Detective King, Deputy Clark told her that she had just worked her shift at the jail and upon returning home, discovered that her weapon (9 MM) was missing and the guy that was staying with her was also gone. She states that Deputy Clark provided the name and description of one Aaron McGhee as a possible suspect. Detective King compared the description of Aaron McGhee to the photos of the bank robbery suspect(s) and advised that they did not appear to match. Detective King added that Deputy Clark advised her that Aaron has had a problem with drugs in the past and that his photo is in the jail system. She added that Deputy Clark told her that Aaron was scheduled to attend a rehab program on the morning of the robbery and that he did not make it to his appointment. Deputy Clark left her phone number (330-634-0489) with Detective King and advised her to call if she needed any further information. Detective King states she believes she asked Deputy Clark if she had reported her weapon stolen, but some how in their conversation, determined that Deputy Clark lived in the City of Tallmadge and therefore did not concern herself with taking the report. **This concluded the interview.**

On **January 19, 2010**, I contacted Deputy Tomei of the Summit County Sheriff's Office Training Division. I requested a weapon history of Deputy Stacy Clark. Deputy Tomei advised that according to training's records, Deputy Clark has qualified with the same hand gun since 2004. He identified it as a Beretta 9 M.M with a serial number of BER32628. He added that she also qualified with a Remington 870 shotgun with a serial number of S969921V.

**On January 19, 2010**, I contacted the Tallmadge Police Department and spoke with Sgt. Christopher. I advised him of my position and of the pending investigation. I asked Sgt. Christopher if he recalled if his agency had taken a stolen weapon report from the residence of Deputy Stacy Clark.

PAGE 2 OF 13
Form IB-1005-A
Revised 6/6/97

BY: LT R.D.C. 0172     DATE: 3/9/10

002168

**SUMMIT COUNTY SHERIFF'S OFFICE**
**SHERIFF DREW ALEXANDER**
**CONFIDENTIAL INVESTIGATION**

Sgt. Christopher stated that he recalls the incident involving Deputy Clark and advised that Officer Mark Wilson was the responding officer. He stated that Officer Wilson is currently on duty and he would have him contact me direct. A short time later, I received a phone call from Officer Mark Wilson. He supplied the following information:

### INTERVIEW

#### Officer Mark Wilson
#### Tallmadge Police Department
#### (330) 633-2181

Officer Wilson stated that on Tuesday, January 12, 2010, at approximately 1430 hours, he was dispatched to conduct a welfare check at 853 Beechwood Drive, which is the residence of Stacy Clark. Officer Wilson advised that he has known Stacy for 26 years. Upon arriving, he spoke with Stacy and advised her of the nature of the call. According to Officer Wilson, Stacy explained to him that Aaron McGhee is the husband of a friend of hers and that they were having marital issues. She added that Aaron had no place to stay so she allowed him to stay with her temporarily. According to Officer Wilson, he was about to leave the residence when Stacy advised that she wanted to talk him about a theft report.

Officer Wilson stated that according to Stacy, she had worked her shift at the jail on Sunday night and upon arriving home on Monday morning, noticed that her weapon and Aaron were both gone. I asked if Stacy provided a description of her weapon. He stated it is a 9 MM Beretta Semi-Automatic hand gun. I asked if she provided him with the serial number and if it was her duty weapon. He stated she did not provide a serial number but did state it was her duty weapon. Stacy advised Officer Wilson that she had spoken to Aaron and that he admitted taking her gun however, he was not currently in possession of it.

While Officer Wilson was at her residence, he had Stacy contact Aaron via cell phone. Officer Wilson stated that he spoke with Aaron and questioned him about the firearm. According to Officer Wilson, Aaron denied taking the weapon. Officer Wilson advised Aaron that if the weapon was not returned by the following morning, which would have been Wednesday (13th), that criminal charges would possibly be filed against him.

Officer Wilson advised Stacy that he would take her report on Wednesday if the weapon was not returned.

According to Officer Wilson, Stacy called the Tallmadge Police Department on the following morning and advised that her weapon had been returned. Officer Wilson did not return to Stacy's residence in order to verify if the weapon had actually been returned. I requested that Officer Wilson document this information and contact me when completed. He stated he would. **This concluded the interview.**

On **January 20, 2010**, I retrieved a message from my office voice mail from Officer Wilson. He advised that the report was completed and could be picked up at the Tallmadge Police Department.

On **January 21, 2010**, at approximately 1315 hours, I met with and interviewed Deputy Stacy Clark in the second floor conference room at the Summit County Jail. Deputy Doug Quiner was present for this interview, which was audio recorded. A CD copy of this interview is contained in the master file.

PAGE 3 OF 13  BY: LT. R.P._____ one  DATE: 3/9/10
Form IB-1005-A
Revised 6/6/97

**SUMMIT COUNTY SHERIFF'S OFFICE**
**SHERIFF DREW ALEXANDER**
**CONFIDENTIAL INVESTIGATION**

Prior to questioning Deputy Clark, I advised her of her Garrity Warnings. She stated she understood them and supplied the following information:

### INTERVIEW

#### Deputy Stacy Clark
#### Summit County Sheriff's Office

Deputy Clark is currently assigned to the Corrections Division and has been assigned to day shift since January 18, 2010. Her days off are Saturday and Sunday. Prior to this and since January 04, 2010, she was assigned to the midnight shift with Wednesday and Thursday off. Deputy Clark confirmed that on Sunday, January 10, 2010, she reported to work for her midnight shift duty, which ended on Monday, January 11, 2010. at 0800 hours. I asked if she went straight home upon the completion of her shift. She stated no, that she had to pick up her kids and take them to school and subsequently returned home at approximately 0930 hours. I asked Deputy Clark what she discovered when she arrived home. She stated that her 9 MM Beretta, which is her duty weapon, was missing from her gun belt, which was in her bedroom. I asked if it is safe to assume that she did not take her gun belt or gun to work on Monday. She stated that's correct. I asked if there was a reason she did not take her gun to work. She stated she did not know she was supposed to have her gun, since she works in the jail. She added that she did not find out until a couple of days ago, that she was supposed to have her gun at work. I asked if she has ever worked in the jail before. She stated no.

I asked what she did when she discovered that her gun was missing. She stated she called a friend of a friend, who had been staying at her house. I asked who was staying at her house. She stated Aaron McGhee. I asked why Aaron was staying at her house. She explained that he was in between places/ homes. She added that he is her son's football coach, which is how she met him. I asked how long he had been staying with her. She stated since the first week of January and added that he asked if he could temporarily stay with her. I asked who the friend was that she called that morning. She stated Leslie and added that Aaron had been staying with Leslie prior to staying with Stacy. I asked why she called Leslie. She explained that Leslie was scheduled to pick up Aaron at 0900 hours that morning from Stacy's house. When Deputy Clark arrived home that morning, she discovered that the door was unlocked, the television was on and the lights were on, so she called Leslie to see if Aaron was with her. I asked if he was with her. She stated that Leslie told her she never came to pick him up. I asked if she made any other phone calls that morning. She stated that numerous phone calls were made. I asked who she had called. She stated that while she was talking with Leslie, who was in her vehicle at the time, Leslie told Deputy Clark that there was a lot of action at the bank near six corners on the Akron Tallmadge border. Leslie made the comment that it appeared that there was possibly a bank robbery due to the number of police cars at the bank. According to Deputy Clark alot of thoughts were going through their (Stacy and Leslie) heads at the time, so she ended the phone call with Leslie and immediately called the Akron Police Department, and spoke with a Detective King. Deputy Clark identified herself to Detective King and confirmed that the bank had been robbed. She then gave Detective King the name and description of Aaron McGhee and advised her that he was in the jail computer if she wished to look him up as a possible suspect. I asked if she told Detective King that her gun was missing. She stated yes. According to Deputy Clark, Detective King took the information and told her that she would call her back if she needed additional information. I asked if she thought Aaron was involved in the bank robbery.

PAGE 4 OF 13
Form IB-1005-A
Revised 6/6/97

BY: Lt. RDC 017C    DATE: 3/9/10

002170

**SUMMIT COUNTY SHERIFF'S OFFICE**
**SHERIFF DREW ALEXANDER**
**CONFIDENTIAL INVESTIGATION**

She stated she did not and explained that Leslie had mentioned it during their conversation. Deputy Clark advised that Leslie's last name is Santamouro. I asked how long Stacy has known Leslie. She stated not very long and that she met her through Aaron.

After speaking with Detective King, and other mutual friends, she periodically fell asleep while waiting to see if Leslie was able to get in contact with Aaron. Deputy Clark added that she made numerous attempts to contact Aaron, but stated his cell phone went straight to his voice-mail.

I asked Deputy Clark if she ever called a supervisor from the Sheriff's Office to advise that her gun had been stolen. She stated no. I asked if there was a reason she did not call anyone. She stated that she first wanted to confirm that it was stolen because she did not know if it was actually stolen or if it had been placed some place else which is why she was trying to get a hold of Aaron. I asked if she was not sure that her gun was stolen, why she had called the Akron Police Department. She stated that she was not sure what had happened and that Leslie is the one that mentioned the bank robbery. I asked if anyone other than Aaron was in her house from Sunday night to Monday morning, when she returned home. She stated she did not know because she was at work, but her house was unlocked when she got home. I asked if her gun was in her holster when she left for work on Sunday. She stated yes. I asked if her gun was in the holster when she returned home Monday morning. She stated no. I asked then why she would not know if it had been stolen. She stated she did not know if Aaron had taken it and put it some place else, she had no clue. I asked Deputy Clark if she searched her house in attempt to locate the gun. She stated she did but did not locate it. I again asked if she called a supervisor to let them know that her gun was missing. She stated she did not.

I asked if Deputy Clark ever got a hold of Aaron. She stated she did not, but a mutual friend did. This mutual friend told her that Aaron stated that the gun was at his buddy's house and that his buddy did not get off of work until 6:00 PM that night and then he would return it. I asked if Aaron returned the gun that night. She stated no. I asked if she knew who Aaron's buddy was. She stated no. I asked if anyone explained why Aaron took her gun. Deputy Clark did not verbally respond but shook her head to respond "no". I asked how long Deputy Clark has known Aaron. She stated three years, which is the time period that Aaron has been coaching Deputy Clark's son (Eddie) in football. I asked if Deputy Clark has spent social time with Aaron other than the short time he stayed with her. She explained that she has often driven Aaron and his son back and forth to various sporting events. I asked if she knows anything about Aaron's background. She stated yes. I asked how she learned this information. She stated that Aaron had told her. I asked what he had told her. She stated that Aaron told her about a break in at Henry Bierce Supply Company and that Aaron did not commit the crime but pled to it. She added that she also learned through Aaron's wife, that he had a previous crack cocaine addiction. I asked for the name of Aaron's wife and Deputy Clark stated Barbara. I asked if Deputy Clark had done any research on Aaron to verify his background. She stated no. I asked if she knew he had been in the county jail before. She stated that Aaron told her that he had. I asked if she looked him up on the jail computer. She stated no. I asked her if she was not concerned about Aaron's previous criminal history knowing he has contact with her son. She stated no since he had told her. I asked if she took his word for truth even though he is dealing with children. She stated that since he was a coach, that the City of Tallmadge must have done some type of background check on him. I again asked Deputy Clark if she ever checked the jail computer to research Aaron. She stated that last summer (2009), Aaron's wife had contacted Deputy Clark because Aaron had been missing for a few days and that Deputy Clark checked the jail computer to see if Aaron was in. She states his status at the time showed "inactive" so she immediately logged off the computer.

**SUMMIT COUNTY SHERIFF'S OFFICE**
**SHERIFF DREW ALEXANDER**
**CONFIDENTIAL INVESTIGATION**

She stated she did not look at his history and only checked to see if he was in jail at that current time. She then stated that she was not sure if she actually looked him up or if she had someone else do it for her.

I asked if Deputy Clark reported to work on Monday night which was her next scheduled work shift. She stated she did. I stated "so obviously without your weapon." She stated "correct." I asked if she said anything to a supervisor at that time since she had not located her weapon. She stated, "No sir."

I then questioned her about the following day, which was Tuesday, January 12, 2010, and asked if the Tallmadge Police Department came to her house. She stated yes and explained that she was asleep when the officer arrived. She states she told the officer that she was going to call them when she woke up because her gun was missing. She then gave the officer the information for a report. I asked if she made any phone calls while the officer was present. She stated that the officer called Aaron and that Aaron denied taking the gun. According to Deputy Clark, the officer told Aaron that he had until the following morning to return the gun or criminal charges would be filed. I asked if Deputy Clark had any idea where her gun was at that point. She stated no. I again asked if she ever reported to a supervisor that her gun had been stolen. She stated no. I asked if there was a reason she did not. According to Deputy Clark, the Tallmadge officer told her that she would need to advise her supervisor if she was going to file charges against Aaron. She added that she was going to advise a supervisor after she filed charges against Aaron the following day, if her gun had not been returned.

I asked Deputy Clark if she ever got her gun back. She stated she got it back that evening (Tuesday 12th). I then asked Deputy Clark if she was aware why Tallmadge had responded to her residence on Tuesday afternoon. She stated that the officer told her that an anonymous complaint was made through CSB that Aaron McGhee was staying with her and that he had a drug conviction and that Tallmadge was following up on the call. I asked Deputy Clark if her kids were at home during this time. She stated that her youngest child was home. I asked what her son was doing since Deputy Clark stated she was asleep when the Tallmadge Officer arrived. She then stated she could not recall if he was at pre-school that morning or what time he arrived home.

I asked Deputy Clark who returned her gun to her. She stated "mutual friends." I asked for the names of these mutual friends and she stated, "The Pughs, Sonja and Antwon Pugh". I asked what their involvement in this incident was. She stated they are mutual friends who know Aaron. I asked Deputy Clark if she asked them where the gun had been. She stated no and added that Antwon had talked to Aaron during this situation trying to get her gun back and that Aaron had told Antwon that the gun was at a buddy's house. According to Deputy Clark, she notified the Tallmadge Police Department to advise them that the gun had been returned. I asked if she ever questioned anyone as to why her gun was stolen or where the gun had been. She stated no, that she was just happy to get the gun back. I advised Deputy Clark that this was her duty weapon that was stolen and asked why she did not care enough to question anyone as to why her gun was stolen or where it was at. She stated she was just happy to get it back and that she did care. I stated, "You cared enough but you didn't ask?" She stated she did care but stated, "What was I going to get from him; he had already told the Tallmadge cop that he didn't take the gun. What is he going to tell me; he's not going to give me any specifics as to where it was or who had it." I stated, "So you have no clue where your gun was for a day and a half and you never called a supervisor to tell them that your gun was missing." She stated no and added that she called the Akron Police Department and the Tallmadge Police Department. I advised Deputy Clark that she did not call Tallmadge, they just happened to show up at her door for an un-related call.

**SUMMIT COUNTY SHERIFF'S OFFICE**
**SHERIFF DREW ALEXANDER**
**CONFIDENTIAL INVESTIGATION**

I re-iterated the fact that she never felt the need to let anyone know from the Sheriff's Office that her gun was stolen. She stated that she was waiting for her gun to return and had true hopes that her gun was going to come back to her.

At this time I asked Deputy Clark if she brought her gun to work today and she stated yes. I then advised her to retrieve her weapon without any ammunition and return with it to the conference room. The audio recording was temporarily stopped at 1338 hours.

At 1339 hours, Deputy Clark returned with her weapon and the audio recording continued. I verified that the Beretta 9 MM that Deputy Clark has in her possession is the same serial number that was provided to me by the Summit County Sheriff's Office training Division, which is BER32628. I asked Deputy Clark how long she has owned her firearm. She stated approximately 3 years. I asked if this is the only weapon she owns. She stated yes and advised that she was issued a shotgun.

I advised Deputy Clark of numerous phone numbers that I needed her to provide to me. She stated she would. I asked Deputy Clark for her cell phone number which she stated is (330) 631-5996.

I asked Deputy Clark if she actually spoke with Aaron prior to getting her gun back. She stated yes. I asked if she questioned him about her gun. She stated she asked him to bring her gun back. I asked if Aaron admitted to her that he had her gun. She stated he did not admit anything to her on the phone. I asked Deputy Clark who had told her that the gun was at a friend's house. She believes that Leslie told that to Antwon. Deputy Clark explained that there were numerous phone calls made between her, Leslie and Antwon in attempt to locate Aaron.

I asked Deputy Clark how well she knows Sonja and Antwon Pugh. She stated she knows them only through attending sporting events since their kids are on the same team. Deputy Clark stated that she wanted to get her gun back and didn't want to "piss anybody off" or make anybody upset by saying that she was going to go to the police and file criminal charges because she felt she might not get her gun back if she did that. According to Deputy Clark, Aaron did not want to have anything to do with her and did not want to talk to her so he talked to Leslie and Antwon who would then relay messages to Deputy Clark. She explained that it was constant back and forth communications between the three parties involved. She added that this communication continued into the next day which would have been Tuesday (12th). I asked if she has spoken to Aaron since her gun was returned. She stated yes. I asked if she questioned him. She stated she did not ask him where it was because she feels he would not have told her where it was. I again asked if she questioned him about her gun at all. She stated, "I don't, it, uhh..., Where it was at?, When I was going to get it back?, Who had it?, When they were gonna, he said this guy was suppose to be at work...." I interrupted and asked, "Is this a yes, you did question him?." She stated, "Well Yes, but I wasn't getting any answers. It wasn't questions like what's this guy's first name and last name, because he wasn't giving me that information." I asked if Deputy Clark asked him, "Why did you steal my gun?" She stated no. I stated, "You didn't ask the guy why did you steal my gun." "Were you not too worried about it?" Deputy Clark stated she did not talk to Aaron as much as she talked to their mutual friends. I advised Deputy Clark that she had the suspect on the phone and never asked him "why did you take my gun?" She stated, "No, I didn't, I just considered the source." I advised her that she must consider the source rather highly since she let him move in with her. She stated she would obviously not anyone into her home if she thought they would do something like that. I asked if Aaron was still staying with Deputy Clark. She stated no. I asked Deputy Clark if she knew that Aaron had been prison. She stated no. I advised Deputy Clark that we do not know if her gun was used in a robbery or not, do we? She stated no.

PAGE 7 OF 13
Form IB-1005-A
Revised 6/6/97

BY: LT. RDP •172     DATE: 3/9/10

**SUMMIT COUNTY SHERIFF'S OFFICE**
**SHERIFF DREW ALEXANDER**
**CONFIDENTIAL INVESTIGATION**

I asked Deputy Clark if there was any truth to the reason for the welfare check. She stated that Aaron was not doing any drugs in her house. I asked if her children were left with Aaron while Deputy Clark was at work. She stated, "No, they were at their dads." I then asked Deputy Clark for the names and ages of her children. She stated that Eddie is 8 years old, Sammy is 7 and Ben is 5.

I asked Deputy Clark for the reason that Aaron was staying with her. She explained that Aaron is going through a divorce. She added that he stayed with the Santamouro's, who also were having marital problems and eventually asked if he could stay with Deputy Clark for a short time. I asked if Aaron has a key to her residence. She stated no.

I asked Deputy Clark how long she has been employed with the Sheriff's Office. She stated 16 years. I stated in the form of a question that she has been employed for 16 years and didn't have a clue that she was supposed to have her gun at work. She stated you're not aloud to have your gun at the jail. I clarified that you are not allowed to have it inside security which is downstairs. She stated you're not allowed to have it in the jail "at all." Deputy Clark appeared to be confused about what I was saying, so I asked her why there are gun lockers in the locker rooms, if you can not have your gun in the jail. It was finally clarified that no guns are aloud inside security, which is the first floor of the jail. I asked if she was aware that at any time, jail staff could be called out for a response. She stated she just learned that fact recently. I again stated in the form of a question that she has been employed for 16 years and never knew that deputies got called out from the jail? She stated, "I didn't...(she paused and did not finish her thought...)". She then stated she knows that deputies can get called out for natural disasters, but didn't know that you had to bring your gun to work every single day with you. I advised Deputy Clark that she has been in law-enforcement for 16 years and didn't know that you had to have access to her firearm while on duty. She stated she did not think she had to have access to her gun working on the midnight shift in the jail.

I asked if there was a reason that she did not want to press charges against Aaron. She stated that since she got her gun back that it was good. She added, that even the Tallmadge Officer told her if she got it back, then it was done. I stated, unless of course it was used in the commission of a crime between then, right? She stated she didn't even think about that. I advised her that she obviously thought about, because she called the Akron Police Department and questioned the bank robbery that took place. She stated it wasn't used in that bank robbery. I asked how she knows that. She stated because Detective King never called her back.

I asked if she knew the Tallmadge Officer's name that she dealt with. She stated yes, Mark Wilson. I asked if she had any previous dealings with him prior to this incident. She stated yes and explained that she was in the Police Explorers in Tallmadge and he was in charge of the program. I asked if she had told the Tallmadge officer that Aaron was going to rehab. She stated that Aaron was moving into a sober living house that Monday morning. I asked if she was aware if Aaron ever made it to his appointment. She stated she did not know. I asked if Deputy Clark was involved in any type of personal relationship with Aaron McGhee. She stated no. I asked if Deputy Clark would do things differently if placed in this situation again. She stated, "Yes, I would have never let Aaron stay at my house." There was a long pause. I asked if there was anything else. She stated obviously reporting it to a supervisor and reporting it to the police earlier. I asked if she would take her gun to work. She stated yes.

**SUMMIT COUNTY SHERIFF'S OFFICE**
**SHERIFF DREW ALEXANDER**
**CONFIDENTIAL INVESTIGATION**

At 1357 hours, the recording device was stopped so that Deputy Clark could retrieve her cell phone and obtain phone numbers that I had requested of the parties involved.

At 1410 hours, the interview continued. I asked Deputy Clark if everything she has said up to this point has been truthful. She stated absolutely. I asked Deputy Clark if she had any questions for me. She stated no, but wanted me to understand that phone calls were being made and it was very chaotic with everyone trying to get a hold of Aaron. She went on to say that she does not know exactly what phone calls were made, or what day she talked to Aaron, she reiterated that it was chaotic. I asked Deputy Clark for the carrier of her cell phone and she advised it is Verizon. **This interview was concluded at 1415 hours.**

On **January 22, 2010**, I drove to the residence of Leslie Santomauro, which is 133 Tallwood Drive in the City of Tallmadge. Upon arriving, I observed a male subject in a truck, pulling out of the drive way at the said residence. I pulled up next to the said driver and identified myself. I advised that I was attempting to locate Leslie. The subject who was later identified as Craig Santomauro, the husband of Leslie, stated that Leslie was at a friend's house and that if I wished, I could follow him over to the residence, which I did. The Friend was one Kimberly Catherine who resided at 283 Green Hill Drive in the City of Tallmadge. This interview took place at Kimberly's residence. Leslie supplied the following information:

**INTERVIEW**

**Leslie Santomauro**
**133 Tallwood Drive**
**Tallmadge, Ohio 44278**
**(330) 858-4294**

I asked Leslie if she had the opportunity to speak with Stacy Clark regarding an incident that took place on Monday, January 11, 2010. Leslie asked if this was about Aaron and the gun. I stated yes. Leslie stated yes and explained that sometime Monday morning, Stacy called her on her cell phone and told her that when she got home from work that morning she discovered that her gun was missing and that she was trying to locate Aaron to ask him about it. I asked Leslie if Aaron was with her when Stacy called her. She stated no and explained that she had dropped her kids off at school and was by herself. She went on to say that during her conversation with Stacy, Leslie drove by a bank near 6 corners in the city of Akron and noticed quite a few police cars in the parking lot. Leslie assumed the bank had been robbed and jokingly said to Stacy that Aaron probably used her gun to rob the bank.

I asked Leslie how long she has known Aaron and if she thought he would do something like that. She stated that Aaron has been a family friend for 2 ½ years and has been trying to turn his life around. She added that Aaron stayed with Leslie and her husband for the entire month of December and was getting involved in church activities with the Santamauros as well as AA groups. Leslie stated she is aware that Aaron has a bad background, but was hoping that by staying with her and her husband, that they would have a positive affect on his life. I asked Leslie if she knows how long Aaron had been staying with Stacy. She estimated approximately 1-2 weeks.

I asked if she knew where Aaron was currently staying. She stated with Sonja and Antwon Pugh. I then asked Leslie how well she knows Stacy Clark. She stated not nearly as well as she knows Aaron, Sonja and Antwon.

PAGE 9 OF 13
Form IB-1005-A
Revised 6/6/97

BY: LT RDL 0112        DATE: 3/9/10

**SUMMIT COUNTY SHERIFF'S OFFICE**
**SHERIFF DREW ALEXANDER**
**CONFIDENTIAL INVESTIGATION**

I asked Leslie if Aaron ever mentioned anything to her about Stacy's life style. Leslie stated that Aaron had mentioned that Stacy is taking pain pills, but does not have a prescription for them.

I then asked if she could recall how many times she spoke with Stacy on the morning in question. She stated they talked quite a few times, because not only was Stacy calling her, but due to being concerned, she called Stacy a few times to see if she got her gun back. She had no additional information. **This concluded the interview.**

On **January 22, 2010**, I drove to 32 South Thomas Road, in the City of Tallmadge. As I pulled into the driveway, I observed an African-American male sitting in the garage entrance. I approached and asked if his name was Aaron. He stated yes, at which time I identified myself to him as a Lieutenant with the Summit County Sheriff's Office. I advised Aaron of the pending investigation and of the allegations made against him. Aaron immediately advised that he has retained an attorney and that he would be more than happy to speak with me, but would like his attorney to be present. I acknowledged and asked for the name of his attorney. He stated Chuck Altweis. I asked Aaron if he was willing to answer a few questions unrelated to the allegations. He stated yes. I asked if he was currently staying with Sonja and Antwon. He stated yes. I asked if he recently spoke with a Tallmadge Police Officer via telephone regarding the incident. He stated yes and that he told the officer that he did not take the gun just as he is telling me that he did not take the gun. He added that he can not figure out why Stacy is trying to blame him for this. He added that Stacy has her own personal struggles to deal with. I advised Aaron that he did not have to answer this next question if he did not want to, and I asked if he had stayed with Stacy on a temporary basis. He stated he would answer because it is no secret that he was staying with Stacy; however he did not take her gun and wouldn't doubt if her gun was never really missing. I asked Aaron if either Sonja or Antwon was home. He stated that Sonja is and asked her to come outside. Sonja supplied the following information:

**INTERVIEW**

**Sonja Pugh**
**32 South Thomas Road**
**Tallmadge, Ohio 44278**
**(330) 962-5851**

I asked Sonja if she knows Stacy Clark. She stated she only knows who she is because their kids are involved in athletics together. I asked if she has spoken to Stacy recently. She advised that sometime last week, Stacy kept calling her cell phone in a panicked state attempting to locate Aaron. I asked Sonja if she spoke with Stacy. She stated that she might have initially, but when Stacy kept calling, Sonja just gave the phone to Antwon to talk to her. I asked if Sonja knew why Stacy was asking about Aaron. She stated at the time, all she knew is it had something to do with Aaron and Stacy's gun. She learned after the fact that Stacy thought Aaron took her gun. I asked Sonja if she had any knowledge to the whereabouts of Stacy's gun. She stated she did not know anything about her gun. I asked if she and Antwon returned Stacy's gun to her. Sonja stated absolutely not. She went on to say that she has 5 kids and she would never let a gun into her house. She added that if Stacy is saying she and Antwon returned her gun to her then she is lying. I asked Sonja if Antwon was home and she stated that he was at work. I left a business card and asked Sonja to have Antwon call me. **This concluded the interview.**

PAGE 10 OF 13
Form IB-1005-A
Revised 6/6/97

BY: Lt. RP ofc

DATE: 3/9/10

002176

**SUMMIT COUNTY SHERIFF'S OFFICE**
**SHERIFF DREW ALEXANDER**
**CONFIDENTIAL INVESTIGATION**

On **January 26, 2010**, I obtained a subpoena for the cell phone records of both Deputy Stacy Clark and Aaron McGhee.

On **January 27, 2010**, I received a phone call from Antwon Pugh, the husband of Sonja. He supplied the following information:

### INTERVIEW

**Antwon Pugh**
**32 South Thomas Road**
**Tallmadge, Ohio 44278**

I asked Antwon how long he has known Stacy Clark. He stated approximately 1 year and explained that he met her through their kids being involved in Tallmadge athletics together. He added that His son has spent the night at her house before because he is friends with Stacy's son. I asked Antwon if he is aware of the pending investigation. He stated yes. I asked if Antwon recalls receiving phone calls from Stacy Clark on Monday, January 11, 2010. He stated that there was a 2 day period in which numerous phone calls were made; not just with Stacy, but with Leslie and Aaron. Antwon could not recall the exact dates of these phone calls. I asked him what the phone calls were in reference to. He stated that Stacy and Leslie kept calling in attempt to locate Aaron. He often called them back to see if they had located Aaron. I asked if Aaron is currently staying at Antwon's residence. He stated yes, but he was presently not at home. I asked Antwon if Aaron ever spoke to him about the gun. He stated that the only thing Aaron ever said was that he did not have the gun. He added that Aaron has even questioned whether or not the gun was actually missing from Stacy's house. He stated that even if Aaron took the gun, he would not know, because Aaron never told him that he had it and Antwon never saw it. He stated that his only involvement in this situation was as a source of communication between all the parties involved. I asked if he and Sonja returned the gun to Stacy. He stated not only did he not return it, but he never saw it. I asked if he had any idea why Stacy would say that he and Sonja returned the gun if they had not. He stated he had no idea and that he and Stacy always seemed to get along. I asked if he was aware if Aaron and Stacy had any type of personal relationship together. He stated he had no idea but knows that Aaron stayed with Stacy for a short time. **This concluded the interview.**

During the course of this investigation, I spoke with **Sgt. Hudnall** of the Akron Police Department Detective Bureau. Sgt. Hudnall advised that the suspect in the bank robbery was a white male; therefore ruling out Aaron McGhee as a suspect. He further advised that there was nothing in their investigation that led them to remotely believe that Deputy Clark's weapon was used in the said robbery. The said suspect in the robbery was later apprehended by the FBI.

On **February 18, 2010**, I contacted Investigator Mark Anderson of the Summit County Prosecutor's Office and requested that he inquire with Verizon Wireless as to the status of the requested subpoena information.

On **February 19, 2010**, I was advised by Mark Anderson that he had contacted Verizon Wireless and inquired as to the subpoena request. He was advised that it would be approximately 2 weeks before the subpoena information would be available. I advised Chief Thornton of this information.

**SUMMIT COUNTY SHERIFF'S OFFICE**
**SHERIFF DREW ALEXANDER**
**CONFIDENTIAL INVESTIGATION**

On **February 26, 2010**, I received one portion of the requested subpoena information. After reviewing these phone records, no additional information was obtained that would lead to further suspects in this case.

On **March 8, 2010**, I spoke with Mark Anderson regarding the remaining information that had been requested via subpoena. He advised that the second phone number was not that of Verizon Wireless, rather it was an AT&T carrier. He advised that a representative from AT&T advised it could be an additional 3-4 weeks before this information was forwarded.

Pursuant to this investigation, and based on the lack of credibility of those parties involved, I was unable to determine if in fact Aaron had taken Dep. Clark's firearm and where it's location was for almost 2 days. Dep. Clark stated that Sonja and Antwon returned her firearm to her, even though both Sonja and Antwon adamantly deny this. This also could not be proven. I did find that Deputy Clark, through her own admissions, was in violation of the following Rules and Regulations of the Summit County Sheriff's Office:

**RULES and REGULATIONS**

**Obeying All Laws- Chapter 8, Section 8-1, subsection A.-** The failure to report immediately to the Division Commander any time a Deputy is arrested or summonsed for any criminal offense **OR** any other situation that may prevent the Deputy from carrying out their official duty. This is a Minor Offense of the 2nd degree. (Deputy Clark admits that she did not contact her supervisor or any representative of the Sheriff's Office to advise that her firearm had been stolen. Since she is assigned in the Corrections Division, the theft of her weapon did not prevent her from performing her regular scheduled duties, however, at any time jail staff can be called out to assist other divisions of the Sheriff Office, thus making it required that all deputies have access to their firearms. Deputy Clark did not have access to her firearm and would not have been able to carry out her official duty as a Deputy Sheriff, had she been called out.)

**Administration of Justice- Chapter 8, Section 8-6, subsection H.** Fail to report to the proper authority all information they acquire concerning any crime or any other condition requiring official service, and any situation requiring the attention of another law-enforcement agency. This is a Minor offense of the 3rd degree. (Dep. Clark's firearm was identified as missing on Monday morning at 0930 hours; however she did not report the theft until the following day in the afternoon (1430 hours), when the Tallmadge Police Department responded to her residence for an unrelated matter. It was only due to this unrelated call that prompted Deputy Clark to advise the Tallmadge authorities.

**Dress Code- Chapter 5, Section 5-5. –** Deputies will wear the official uniform as prescribed by the Sheriff's Office Uniform specifications while on duty. This is a Minor offense of the 3rd degree. (Through her own admission, Deputy Clark did not have access to her firearm while on duty.)

**Firearms- Chapter 4, Section 4-11-** When a firearm is not carried while on duty or off duty, the firearm shall be properly secured. This is an informal offense violation. (Through her own admission, Deputy Clark stated that her firearm was left at her residence in its holster, unsecured in her bedroom, while she was at work. Deputy Clark also admitted that an acquaintance of hers was staying at her residence and had access to her unsecured firearm.)

BY: LT. R.D. 0172    DATE: 3/9/10

**SUMMIT COUNTY SHERIFF'S OFFICE**
**SHERIFF DREW ALEXANDER**
**CONFIDENTIAL INVESTIGATION**

**EVIDENCE:**

1. Copy of confidential report submitted by Dep. Deglagus Bradford, dated 01-15-10.
2. Copy of confidential report submitted by Dep. Nancy Mundy, dated 01-15-10.
3. Copy of confidential report submitted by Officer Mark Wilson (Tallmadge PD), dated 01-20-10.
4. CD Audio recording of Deputy Stacy Clark interview, dated 01-21-10.

**PHYSICAL DESCRIPTION:**

1)

    SSN:          Height:
    DOB:          Weight:
    SCSO ID#:    Hair :
                    Eyes :

**VEHICLE DESCRIPTION:**

1)

    VIN:

BY: Lt. RDB 0172    DATE: 3/9/10

PAGE 13 OF 13
Form IB-1005-A
Revised 6/6/97

**SUMMIT COUNTY SHERIFF'S OFFICE**
**SHERIFF DREW ALEXANDER**
**CONFIDENTIAL INVESTIGATION**

INCIDENT REPORT NO. _____

FROM: Mundy, Nancy G.

TO: Chief James; Lieutenant Paolucci

SUBJECT: Deputy Stacy Clark

PLACE OF OCCURRENCE:

DATE OF INCIDENT: _____

DATE INVESTIGATED: January 15, 2010

ARRESTS:

This report is written under Garrity Rights. It is my understanding that this report is made for administrative, internal agency purposes only and will not be used as part of a criminal investigation. This report is made by me after being orderd to do so by lawful supervisory personnel. It is my understanding that by refusing to obey an order to write this report, I can be disciplined for insubordination and that the punishment for insubordination may be up to and including termination of employment. This report is made only pursuant to such orders and the potential punishment / discipline which may result for failure to obey that order.

On Friday, January 15, 2010, I was approached by Sgt. Giordano and asked if I had any knowledge of the whereabouts of Deputy Stacy Clark's weapon. I advised Sgt. Giordano that the only knowledge I had was that was Deputy Clark telephoned into the Akron Police Departments Detective Bureau, identified herself as a Summit County Deputy and proceeded to ask if there had been a bank robbery in Akron. When she was advised that yes there had been, she told them that she thought she had a viable suspect, and that when she arrived home from her overnight shift her 9mm was missing from her home. Sgt. Giordano then ordered me to submit this confidential.

That is the extent of the knowledge I have regarding this matter.

Respectfully submitted

BY: _Deputy N. Mundy #42_  DATE: 1-15-10
                    0622

PAGE 1 OF 2
Form IB-1005-A
Revised 6/6/97

002180

# SUMMIT COUNTY SHERIFF'S OFFICE
## SHERIFF DREW ALEXANDER
### CONFIDENTIAL INVESTIGATION

**INCIDENT REPORT NO.** _____

**FROM:** Deputy DeGlagus Bradford

**TO:** Lt. Paolucci

**SUBJECT:** Missing Firearm

**PLACE OF OCCURRENCE:** Summit County Jail
205 East Crosier St.
Akron, Ohio 44311

**DATE OF INCIDENT:** 01/11/2010

**DATE INVESTIGATED:** _____

**ARRESTS:** _____

On 01-11-2010, I had a conversation with Deputy Nancy Mundy about what she heard from an Akron Police Detective. The Akron Detective Bureau had received a phone call from Deputy Stacey Clark about her gun missing and it might be involved in a bank robbery. Later, I read in the Akron Beacon Journal about Two bank robberies and I felt like I should advise someone of this situation. I then advised Sergeant Jack Giordano of the conversation that Deputy Mundy and I had about Deputy Stacey Clark's gun.

BY: _DSB_ #1818   DATE: 1/15/2010
Deputy DeGlagus Bradford

Page 1 of 1
CF-001-97

002181