**SUMMIT COUNTY SHERIFF'S OFFICE**
**RICHARD L. WARREN, SHERIFF**
**CONFIDENTIAL INVESTIGATION**

INCIDENT REPORT NO.
INTERNAL USE

FROM: Lt. James R. Dodds  
DATE OF INCIDENT: 07/30/1999

TO: Chief Finical, Major Scalise  
DATE INVESTIGATED: 08/23/2000

SUBJECT: Internal investigation  
ARRESTS: N/A

PLACE OF OCCURRENCE: County of Summit

PLAINTIFF'S EXHIBIT 11

**Synopsis:**

On 08-23-2000, this writer was contacted by the Summit County Jail Commander, Major Scalise. Major Scalise advised this writer that there was an incident that occurred inside the Summit County Jail on unit three. the Major said the incident involved Deputy Juanita Bennett and possibly Deputy Kandy Fatheree. Major Scalise indicated that Deputy Juanita Bennett was observed by several Deputies on the morning of 08-23-00 taking photographs of a kitchen food cart. The Major also indicated that Deputy Bennett had requested the Deputies on Unit three to stack all the breakfast trays on one food cart. Major Scalise said at the time he wasn't sure why Deputy Bennett made this request and took the photographs. The major stated there was a possibility that the incident may be connected with a worker compensation claim filed by Deputy Kandy Fatheree. He said Deputy Fatheree had filed an injury report on 07-30-99. Deputy Fatheree claimed to have hurt her back while pulling a loaded jail food cart. The injury reported by Deputy Fatheree occurred in the hallway area outside pod 2-D. Major Scalise requested that this writer contact all Deputies working on Unit 3 on 07-30-00 and request confidentials from same.

**Investigation:**

On 08-24-00 this writer had contact with Deputies Doug Lemon, Kerry Newman, David Hawk, and Bruce Redfern. All were advised to write confidentials in reference to conversation and observations of Deputy Juanita Bennett on 08-23-00 during the serving of breakfast trays on Unit 3 in the Summit County Jail.

On 08-28-00, after the confidentials were turned in and read, this writer met with Major Scalise. He was advised that after reading the confidentials submitted by the Deputies from Unit three on 08-23-00, I was able to determine that Deputy Juanita Bennett had requested Deputies on Unit 3 to stack all the breakfast trays on the unit on one food cart. Deputy Bennett was then observed removing a camera that was hidden in her uniform shirt and taking pictures of the food cart loaded with breakfast trays. Deputy Bennett made a comment to Deputy Bruce Redfern that this ,(taking the photograph), was to help another Deputy. Major Scalise then advised that the investigation would remain open. The major said he had suspicions that the picture was going to be used to further an injury claim initiated by Deputy Kandy Fatheree.

Page 1 of 14  
CF-001-97

BY _____  
Lt. James R. Dodds

DATE: 08/23/2000

CLARK_00001

**CONFIDENTIAL INVESTIGATION - CONTINUED**

INCIDENT REPORT NO. : INTERNAL USE
SUBJECT : Internal investigation

---

He advised that Deputy Kandy Fatheree's workers compensation claim had been turned down at a hearing on 08-07-00. Major Scalise said Deputy Fatheree appealed the workers compensation claim and her hearing was set for 09-05-00. The decision was made to wait until after the appeal hearing before furthering the investigation pending the outcome of the appeal hearing with the Bureau of Workers Compensation on 09-05-00.

On 09-12-00, at 9:30AM, this writer met with Major Scalise. Major Scalise stated that during her appeal hearing ,( 09-05-00 ), for her workers compensation claim, Deputy Fatheree submitted a picture of a jail food cart loaded with food trays. Major Scalise advised that the Sheriff's representative at the hearing was Summit County Prosecutor Mark Cluse. Major Scalise then advised this writer to proceed with the investigation.

On 09-12-00, at 11:00 this writer met with Summit County Prosecutor Mark Cluse. Prosecutor Cluse advised this writer that during the appeal hearing for Deputy Fatheree that her attorney produced a picture of a food cart filled with food trays. Deputy Fatheree and her attorney submitted the picture as a true and accurate representation of a jail food cart as it appeared on the morning of the injury to Deputy Fatheree. Her attorney also indicated that the food cart with trays weighed over 500 lbs. Deputy Fatheree also reiterated that these were the true facts. I then advised Prosecutor Cluse that the picture presented in the hearing was probably staged by another Deputy in the Jail. I then related the facts of my investigation to Prosecutor Cluse. He stated that he wasn't aware of the picture being taken at the time of the appeal hearing. He said being unaware of the facts surrounding the picture, he didn't ask a lot of questions about the picture and didn't question it's authenticity. Prosecutor Cluse then said, that even though Deputy Fatheree's appeal was turned down by the Bureau of Workers Compensation, he felt Deputy Fatheree would file an additional appeal to which she is entitled. Prosecutor Cluse said Deputy Fatheree has had an ongoing active workers compensation claim #78-57684, since 1978. A decision was made at this time to wait and see if Deputy Fatheree was going to file an appeal to her claim. If an appeal was filed Prosecutor Cluse would ask additional questions as to where the picture of the food cart was taken and by whom. This writer then asked Prosecutor Cluse for a copy of his entire case file reference Deputy Fatheree's current injury claim of 07-30-99. The workers compensation claim number for her current injury is 99-619551. Prosecutor Cluse advised that he would obtain this writer a copy of his case file. The meeting with Prosecutor was then concluded.

On 09-13-00, this writer met with Major Scalise and briefed him on my meeting with Prosecutor Cluse. It was decided at that time to wait for the appeal process on Deputy Fatheree's claim.

On 09-26-00, Major Scalise advised that Deputy Fatheree filed for an appeal hearing on claim # 99-619551. This writer then agreed to call Prosecutor Cluse for a meeting to obtain a copy of his case file.

Page 2 of 14
CF-001-97

BY _____
Lt. James R. Dodds

DATE : 08/23/2000

CLARK_00002

**CONFIDENTIAL INVESTIGATION - CONTINUED**

**INCIDENT REPORT NO.:** INTERNAL USE
**SUBJECT:** Internal investigation

On 10-02-00, this writer met with Prosecutor Cluse. Prosecutor Cluse said Deputy Kandy Fatheree's appeal hearing was set for 10-04-00. Prosecutor Cluse stated he intended to ask questions in reference to the picture of the food cart and trays submitted in her first appeal hearing. The questions would center around the origin of the picture, who took it, where the picture was taken and the intention for submitting it in her hearing. Prosecutor Cluse then supplied this writer with a copy of his case file for review. This writer then supplied Prosecutor Cluse with Summit County jail records and documentation including Jail pod logs for the 07-30-00, records indicating the weight of the jail food carts and food trays. The meeting was ended with Prosecutor Cluse at this time.

On 10-03-00 and 10-04-00 this writer reviewed the documents supplied by Prosecutor Cluse. Documents reviewed consisted of Ohio Bureau of Workers Compensation records, Deputy Kandy Fatheree's physicians records and documentation from Sandy Szollosi, Summit County Executive's Office, Worker compensation division. During this review process the following discoveries were made:

1. Deputy Kandy Fatheree has had an active workers compensation claim since 11-19-78 and has received continued treatment in this claim. The workers compensation claim number is 78-57684. There has been approximately $10,000.00 in medical treatment with the last known medical paid on 12-10-99. Ms. Fatheree also received a 10% permanent partial award in this claim. (See document submitted to Prosecutor Mark Cluse from Sandy Szolosi.)

2. Correspondence from Sheakley Unicomp. Inc. to Deputy Kandy Fatheree's Physician Dr. Jeffrey Fedorko. This was an authorization form approving treatment from 06-01-99 to 12-01-99 for Chiropractic treatment due to her Bureau of Workers Compensation claim # 78-57684. Sheakley Unicomp Inc is an Ohio Workers Compensation managed care organization.

3. Documentation from Deputy Kandy Fatheree's Physician, Dr. Jeffrey Fedorko to The Ohio Bureau of Workers Compensation and Sheakley Unicomp Inc. Most of the submissions were Patient records indicating treatment for neck thoracic and lumbar portions of Deputy Fatheree due to her injury sustained from claim # 78-57684. They were submitted for purposes of payment to Dr. Fedorko by the Ohio Bureau of Workers Compensation.

4. Documentation from Deputy Fatheree's back surgeon, Dr. Scott Miller. Deputy Fatheree had back surgery in February of 2000. Dr. Millers patient notes in Deputy Fatheree's medical case history indicate that on 05-02-00 she visited Dr. Miller and had a discussion with him. Dr. Miller indicates that he discussed with her at length, her previous history of injury and it was apparent to him the she has a longstanding history of degenerative change; however he told her that the injury of pulling the food cart was more than likely an aggravation of her preexisting condition, (workers compensation claim # 78-57684), rather than a new injury.

Page 3 of 14
CF-001-97

BY _____
Lt. James R. Dodds

DATE: 08/23/2000

CLARK_00003

**CONFIDENTIAL INVESTIGATION - CONTINUED**

INCIDENT REPORT NO.: INTERNAL USE
SUBJECT: Internal investigation

5. On 08-03-00, Deputy Fatheree visited Ohio Bureau of Workers Compensation Physician, Dr. Ruez. Dr. Ruez writes in his Physician's narrative that Deputy Fatheree's condition is a matter of 20 years of Degenerative Disc Disease and not due to her mild injury of 07-30-99.
Prosecutor Cluse also supplied a photocopy of the picture of a jail food cart stacked with trays submitted as evidence during Deputy Fatheree's appeal hearing dated 09-05-00. In counting the trays in the photograph there appears to be 138 trays stacked on one cart. In fact according to pod logs for unit 2, dated 07-30-99, (the pod Deputy Fatheree work when she was injured), there were 92 trays served. This is a difference of 46 food trays from what was actually served on the day of the injury and the picture presented in the appeal hearing of 09-05-00.

6. Office Notes of Dr. Jeffrey Fedorko on 05-27-99 and 06-24-99 in which Deputy Fatheree told the Doctor that her pain in her lower back was so bad that it would bring tears to her eyes. This statement occurred less than two months prior to the alleged date of injury.

On 10-04-00 Deputy Kandy Fatheree had a second appeal hearing for her disallowed workers compensation claim # 99-619551. This claim number was assigned to her claim of injury at the Summit County Jail on 07-30-99. Note: The findings from that hearing is that the claim was denied and the claimant did not sustain an injury in the course of and arising out of her employment.

On 10-09-00 this writer met with Prosecutor Mark Cluse. The purpose of the meeting was to discuss what transpired in Deputy Fatheree's appeal of 10-04-00. Prosecutor Cluse stated that Deputy Fatheree became very defensive when he asked question about the photograph of the food cart and trays she submitted as evidence in her first appeal hearing. Mr. Cluse said she tried to recant the fact that in the first hearing she represented the photograph as a true and accurate representation of the food cart she was pulling when she was injured. He asked who took the photograph. Deputy Fatheree responded by advising that a Deputy in the jail took it. He then asked who that person was? Prosecutor Cluse said her attorney would not let her answer this question and in fact the hearing officer said she didn't see the relevance to her case and made him move forward.

On 10-10-00, this writer met with Major Scalise and Summit County Sheriff's Office Personnel Director, Yamini Adkins. This writer advised Ms. Adkins and Major Scalise of my findings from Prosecutor Cluse. It was then discussed that Deputy Fatheree may have been less than truthful on her application for employment with the Sheriff's Office due to the fact that she is partially disabled and has been under a Doctors care for twenty years because of a 1978 (still active), workers compensation claim. Personnel Director Adkins then supplied this writer with a photocopy of Deputy Kandy Phillips-Fatheree's personnel file. This writer then reviewed the file and found the following:

Page 4 of 14
CF-001-97

BY _____
Lt. James R. Dodds

DATE: 08/23/2000

1. Deputy Fatheree filed a notarized application for employment with the Summit County Sheriff's Office on October 18th 1994. The reason for the application being notarized is that the applicant is swearing and affirming that the information contained in the application is true and accurate. In fact the paragraph just above the applicants signature reads as follows:

"I solemnly swear that the answers I have made to each and all of the questions in this application are complete and true to the best of my knowledge and belief, and that no attempt has been made to conceal pertinent information. I authorize my physicians, former employers, schools and personal references to provide any information they may have regarding me, weather or not it is in their records, and I hearby release them, individually and officially, from and all liability in divulging same. I understand that all statements made are open to investigation by the Summit County Sheriff's Office, and that if any information given by me in this application is found to be false or misleading, I will be subject to dismissal."

On page two of her employment application she answered three questions:

Q: Do you have any impairments which would interfere with your ability to do the job(s) for which you have applied? Deputy Fatheree answered no.

Q: Statement of applicant's present mental/physical health in own words: Deputy Fatheree answered: I have good health.

Q: Are you presently able to perform all of the requirements of the position(s) for which you have applied? Deputy Fatheree answered yes.

2. Summit County Sheriff's Office Background Investigation form document dated 01-28-92. This was conducted by Detective John Karabatsos of the Summit County Sheriff's Office. It was a background investigation conducted for the purpose of considering Kandy Phillips-Fatheree for the Summit County Sheriff's Office Academy. In the remarks section of this document Detective Karabatsos writes: Has no continuing medical problem that would keep her from any type of work.

3. Document: Confidential dated 02-10-92 submitted by Detective Karabatsos with the subject being Background investigation – applicant for academy – Kandy L. Phillips. On page three of the document under the section titled Personal, paragraph three, Detective Karabatsos writes: Ms. Phillips states that she acquired one workers compensation claim due to a neck injury, but it is no longer active. Ms. Phillips states that she has no physical limitations that would keep her from any type of employment activity.

## CONFIDENTIAL INVESTIGATION - CONTINUED

INCIDENT REPORT NO. : INTERNAL USE
SUBJECT : Internal investigation

---

4. Health and physical examination record dated 06-16-95. Deputy Fatheree submitted this document to the personnel department. The document is a physical examination form filled out by Deputy Fatheree's physician, Dr. Jeffrey S. Fedorko. There are a series of twenty one questions on the examination form they are yes and no questions. The preface for answering each of these questions is "Does the Patient have medical history or demonstrate symptoms of any of the following:

    Question number 13 – Backache or injury............Answer - No.
    Question number 20 – Under Physician's continuing care..............Answer – No

    Note: This document was signed by Dr. Jeffrey S. Fedorko. Dr. Fedorko is and has been treating Deputy Fatheree for neck and back pain for 17 years under workers compensation claim #78-57684.

On 10-11-00, this writer met with Major Scalise. I briefed Major Scalise as to the findings from Deputy Fatheree's Personnel file. It was decided at that time to interview Deputies, Kerry Newman, David Hawk, Bruce Redfern, Rawney Trunko, Kandy Fatheree and Juanita Bennett. Major Scalise delegated Sgt. Gina McFarren to assist me with the interviews.

On 10-12-00, at 0615, Deputy Kerry Newman was interviewed by this writer and Sgt. Gina McFarren in conference room A of the Summit County Jail in reference to the incident that occurred involving Deputy Juanita Bennett and the stacking of food trays on a jail food cart on Unit 3 on 08-23-00. Deputy Newman made the following statement:

   Deputy Newman stated that on 08-23-00 after feeding the inmates breakfast he was moving trays to a food cart in the hallway. He said Deputy Juanita Bennett came by and said "They want all the trays on one cart". He then put all the trays from his pod on one cart. Deputy Newman said he did overhear another Deputy tell Deputy Bennett they couldn't do that because we have too many trays. Deputy Newman could not recall which Deputy made that statement. Deputy Newman stated that he didn't recall anything else reference the incident. The interview was then concluded.

Page 6 of 14
CF-001-97

BY _____
Lt. James R. Dodds

DATE : 08/23/2000

CLARK_00006

## CONFIDENTIAL INVESTIGATION - CONTINUED

INCIDENT REPORT NO.: INTERNAL USE
SUBJECT: Internal investigation

On 10-12-00, at 0635, Deputy David Hawk was interviewed by this writer and Sgt. Gina McFarren in conference room A of the Summit County Jail in reference to the incident that occurred involving Deputy Juanita Bennett and the stacking of food trays on a jail food cart on Unit 3 on 08-23-00. Deputy Hawk made the following statement:

> Deputy Hawk stated that he did see Deputy Juanita Bennett on unit 3 on the morning of 08-23-00. He said he did not have conversation with Deputy Bennett and did not hear anything about the incident of stacking trays on one cart or pictures being taken of same. The interview was then concluded.

On 10-12-00, at 0645, Deputy Bruce Redfern was interviewed by this writer and Sgt. Gina McFarren in conference room A of the Summit County Jail in reference to the incident that occurred involving Deputy Juanita Bennett and the stacking of food trays on a jail food cart on Unit 3 on 08-23-00. Deputy Redfern made the following statement:

> Deputy Redfern said on 08-23-00, he was working as the pod control Deputy on unit 3. He stated that he and Deputy Doug Lemons were in the hallway of unit 3 when the breakfast trays arrived. Deputy Redfern said shortly after the breakfast trays arrived that Deputy Juanita Bennett arrived at unit 3. He said Deputy Bennett told he and Deputy Lemons that when breakfast was finished she wanted all the food trays on one cart. Deputy Redfern said he didn't think much about it and obliged her request. After breakfast was finished all the trays from unit 3 were stacked on one cart and pushed into the hallway leading to unit 2. Deputy Redfern said Deputy Bennett then returned to unit 3 and said "Thanks Guys". He said Deputy Bennett then reached inside her uniform shirt and pulled out a camera and started taking pictures. Deputy Redfern asked her what she was doing and she stated, "this is to help another Deputy". Deputy Redfern then told Deputy Bennett that the trays were stacked too high to transport to the kitchen and she would have to break them down to a second cart. He stated she did transfer trays to a second cart that had been used to deliver some of the trays from unit 3. Deputy Bennett then left the unit. Deputy Redfern says Deputy Rawney Trunko saw flashes (Camera Flashes) in the hallway leading between units 2 and 3. Deputy Redfern told Deputy Trunko, in a subsequent conversation, that the flashes were from a camera used by Deputy Bennett. The interview with Deputy Redfern was concluded.

On 10-12-00, at 0703, Deputy Rawney Trunko was interviewed by this writer and Sgt. Gina McFarren in conference room A of the Summit County Jail in reference to the incident that occurred involving Deputy Juanita Bennett and the stacking of food trays on a jail food cart on Unit 3 on 08-23-00. Deputy Trunko made the following statement:

> Deputy Trunko said he was working on unit 2-B on the morning of 08-23-00. He said shortly after breakfast he saw two flashes coming from the hallway that connects units 2 and 3. He said at the time he didn't know what the flashes were.

Page 7 of 14
CF-001-97

BY _____
Lt. James R. Dodds

DATE: 08/23/2000

CLARK_00007

The following day he said he had a conversation with Deputy Redfern. Deputy Redfern told him that Deputy Bennett had been on his pod at breakfast time taking pictures of a food cart and trays. Deputy Trunko said he then realized that the flashes he saw at breakfast time on the previous day were camera flashes. Deputy Trunko reported this to Captain Momchilov on 08-24-00. The interview with Deputy Trunko was then concluded.

On 10-12-00, at 0743, Deputy Kandy Fatheree was interviewed by this writer and Sgt. Gina McFarren in conference room A of the Summit County Jail in reference to the incident that occurred involving Deputy Juanita Bennett and the stacking of food trays on a jail food cart on Unit 3 on 08-23-00. Deputy Fatheree was also interviewed about her workers compensation claim for her injury on 07-30-99 and to her truthfulness regarding her employment application. Deputy Fatheree was advised at the beginning of the interview that she was being interviewed in conjunction with an administrative disciplinary investigation. She was advised that she was entitled to union representation during the interview. Deputy Fatheree requested an attorney. I advised her that the investigation at this time was not criminal in nature and an attorney would not be provided. I advised her that if at anytime during the interview she made any incriminating statements that I would stop her and give her the opportunity to seek legal council. Deputy Fatheree then indicated that she wanted Deputy Juanita Bennett to be her union representation. I advised her that would not be possible because she was a part of the investigation and that would be a conflict of interest. This writer did advise her that she could select another representative of any union representatives working at the time. Deputy Fatheree stated she wanted Deputy Mike Walsh to represent her. Deputy Walsh was summoned to conference room A and attended the entire interview. Deputy Fatheree made the following statement:

This writer started the interview by producing the photocopied picture of the jail food cart stacked with trays. This was the photograph that Deputy Fatheree had presented as evidence in her appeal hearing for her workers compensation claim on 09-05-00. I asked Deputy Fatheree if she was familiar with the photograph and she stated she was. I then asked her if this was a copy of the photograph that she submitted as evidence in the workers compensation appeal hearing of 09-05-00. Deputy Fatheree indicated it was the same photograph. I then asked Deputy Fatheree who took the picture. She stated she didn't know who took the picture. I then asked her who supplied her the picture to present as evidence in the hearing. Deputy Fatheree then became very nervous and asked for an attorney. I advised her that she had not made any incriminating statements and there was not a need for an attorney at this time. I again asked her how she came into possession of the picture. Deputy Fatheree said that Deputy Juanita Bennett gave her the picture. I asked her if she had discussions with Deputy Bennett about getting her a picture of the Jail food cart with trays stacked on them. Deputy Fatheree said she did ask Deputy Bennett to take the pictures. Then she said originally I was going to take pictures of the food trays being taken to the Glenwood Jail as they were being loaded into the food service van. I asked her why. She said because it was outside of jail security. I then asked her why she would have Deputy Bennett take the photographs inside security and present them as evidence if she thought she was not allowed to take pictures inside security.

Page 8 of 14
CF-001-97

BY _____
Lt. James R. Dodds

DATE : 08/23/2000

CLARK_00008

She said she wasn't sure whether she could take them inside security or not. I then asked her why she just didn't ask. Deputy Fatheree didn't answer, she just shrugged her shoulders. Deputy Fatheree admitted that the pictures were taken after her initial hearing was turned down and presented at her appeal hearing. Deputy Fatheree said Deputy Bennett gave her the photograph around Labor Day of this year. She said Deputy Bennett presented the photograph to her at a restaurant.
Deputy Fatheree says that although she did request the pictures from Deputy Bennett, she does not know who actually took the pictures because she was not present. Deputy Fatheree stated she wanted in "The record" that she was making this statement against her will. This writer then shifted the focus of the interview to Deputy Fatheree's workers compensation claims.

Deputy Fatheree said she has filed three worker compensation claims.

1. Claim filed while working at Arby's roast beef sandwich shop. She said she spilled hot coffee on herself and got 2nd and 3rd degree burns. She said she did not receive any compensation for the accident other than getting her medical bills paid. Deputy Fatheree says this claim is no longer active.

2. Claim filed ,(Ohio Bureau of Workers Compensation Claim # 78-57684), while working at State Jewelers on Brittain Rd. in the city of Tallmadge. She says she injured her neck when she hit her head on an open locker door. She states this is still an active claim and receives medical compensation. This writer then asked Deputy Fatheree if she ever received a cash award in this claim. Deputy Fatheree said she had. I then asked her if she knew that the award was for a 10% permanent partial disability. She said she knew she had gotten the award but didn't know that it was for 10%. Deputy Fatheree stated she has seen Dr. Fedorko for the last seventeen years on this claim. She says she visits Dr. Fedorko approximately once a month.

3. Claim filed, (Ohio Bureau of Workers Compensation Claim #99-610551 0, occurred on 07-30-99 while pulling a food cart at the Summit County Jail. Deputy Fatheree stated that the claim was disallowed and she is currently appealing the ruling.

At 0827, There was a break in the interview. Deputy Fatheree was afforded an opportunity to use the restroom and get a drink.

At 0841, the interview was resumed. At this time Deputy Mike Walsh, acting as Deputy Fatheree's union representative interrupted the interview and advised Deputy Fatheree that he felt the interview was "Beyond his scope." He also stated she needed another union representative. Deputy Fatheree then requested Hugh Bennett as her representative. Deputy Fatheree was advised that she could change union representatives but it would have to be a Deputy Working on shift.

**CONFIDENTIAL INVESTIGATION - CONTINUED**

**INCIDENT REPORT NO.:** INTERNAL USE
**SUBJECT:** Internal investigation

---

Deputy Fatheree then stated she wanted to keep Deputy Walsh as her representative. The interview continued:

> Deputy Fatheree was asked what Dr. Fedorko was treating her for. She said for a neck and spine injury due to her workers compensation claim # 78-57684. She stated that Workers Compensation paid for the visits to his office and that he treated her exclusively under the compensation claim and has done so for the last 17 years.
> I asked Deputy Fatheree about her recent back surgery and if it was connected or related to the injury she sustained on 07-30-99. Deputy Fatheree said that it was directly related to the injury. This writer then asked about the back pain that was so severe two months before her injury that, according to her own words noted in Dr. Ferko's patient notes, that it "Brought tears to my eyes". She blamed this on Deputy Chris Spencer throwing her around for eight straight hours during in-service training, (Clamp class). I asked Deputy Fatheree who her surgeon was for her back operation. She said it was Dr. Miller. I then asked her if her back surgery was a direct result of her injury on 07-30-99. She stated it was a direct result of the injury. This writer then asked Deputy Fatheree to explain the fact that her surgeon wrote in her medical chart that the surgery was a result of Degenerative disc disease, and not a result of the minor injury sustained on 07-30-99, and in fact had discussed this with her. Deputy Fatheree responded by saying, "Kiser is paying for the surgery".

At this point the focus of the interview shifted to questions regarding her employment application:

> Deputy Fatheree was shown a copy of her employment application for the Summit County Sheriff's Office dated 10-18-94. She agreed that it was her application and she had submitted it for consideration for employment with the Sheriff's Office. Deputy Fatheree's attention was drawn to three questions on page three of the application regarding impairments, health and ability to perform job requirements. She admitted that she marked on the application that she did not have any impairments that would interfere with her job and that she was in good health, and that she was able to perform all requirements to the position to which she had applied. I then asked her if she recalled being interviewed by Detective John Karabatsos of the Summit County Sheriff's Office. She said yes. She said Detective Karabatsos was the person conducting her background investigation. I then asked her if she recalled telling Detective Karabatasos that she had acquired one workers compensation claim due to a neck injury but the claim was no longer active, and she had no physical limitations that would keep her from doing her job. Deputy Fatheree said she didn't recall making that statement. This writer then showed Deputy Fatheree the portion of the confidential written by Detective Karabatsos that depicted what she had said. Deputy Fatheree said she just couldn't understand why Detective Karabatsos would have written that. Deputy Fatheree was shown a Health and Physical examination form with Sheriff's Office Letterhead. The form is a Dr.'s examination form to allow applicants to participate in strenuous training. The form was filled out by Deputy Fatheree's Physician of 17 years, Dr. Jeffrey S. Fedorko. Deputy Fatheree said she was familiar with the form and did admit that she submitted the form to the Sheriff's Office.

Page 10 of 14
CF-001-97

BY _____
Lt. James R. Dodds

DATE: 08/23/2000

CLARK_00010

## CONFIDENTIAL INVESTIGATION - CONTINUED

**INCIDENT REPORT NO.:** INTERNAL USE
**SUBJECT:** Internal investigation

This writer then called Deputy Fatheree's attention to questions 13 and 20 of the form. Question thirteen asked if the patient has a medical history or demonstrate present symptoms of backache or injury. Question 20 asked if the patient is under a physicians continuing care. This writer then asked Deputy Fatheree why she would submit a form of this nature with questions 13 and 20 obviously answered falsely. Deputy Fatheree couldn't explain why she would do that and acted as if she wasn't aware that the questions were answered no when they were in fact yes. The interview with Deputy Fatheree was terminated at 0919.

On 10-12-00, at 0924 this writer and Sgt. Gina McFarren interviewed Deputy Juanita Bennett. Deputy Bennett was advised that the interview was being conducted due to an administrative disciplinary investigation. She was told that she would be permitted to have a union representative present during her interview. Deputy Bennett asked for Hugh Bennett of The Ohio Labor Council. This writer advised her that her choice of union representation would have to be from the representatives working day shift at the jail. Deputy Bennett then chose Deputy Mike Walsh as her representative. Deputy Walsh responded to conference room A. Upon Deputy Walsh's arrival, he informed Deputy Bennett that he would sit in on the interview but the issue was beyond his scope. Deputy Bennett then indicated that she wanted Deputy Walsh to attend the interview. At approximately 0938 the interview with Deputy Bennett commenced. This writer advised Deputy Bennett that the interview was in reference to an incident that occurred on 08-23-00. She was told the incident concerned the serving of breakfast trays on unit three in the jail and the taking of photographs of those trays within the jail facility. Deputy Bennett made the following statement:

> This writer produced the copy of the photograph of jail trays stacked on a jail serving cart that was introduced as evidence in Deputy Kandy Fatheree's workers compensation appeal hearing dated 09-05-00. This writer asked Deputy Bennett if she was familiar with the photograph. Deputy Bennett said "No". I then advised her that Deputy Fatheree had been interviewed earlier and she said that Deputy Bennett supplied her with the picture. I then waited for a response from Deputy Bennett. Deputy Bennett stated that she wanted another union representative because this was beyond Deputy Walsh's scope. Deputy Bennett then requested Deputy David Stone. This writer left the room and contacted Captain Pongracz. This writer advised Captain Pongracz that Deputy Bennett was requesting Deputy Stone as her representative. Captain Pongracz then contacted the supervisor in the jail kiosk to see if Deputy Stone was working. He was not. This writer then advised Deputy Bennett that Deputy Stone was not available and offered her another choice. Deputy Bennett then decided that she would continue with Deputy Walsh as her representative. The interview continued. This writer repeated the question to Deputy Bennett whether or not she had knowledge of the picture. Deputy Bennett responded by saying that she didn't recall. I then asked her a series of questions regarding the picture including if she took the picture, if she has ever had a camera in the jail facility, if she provided the picture to Deputy Fatheree or had conversation about taking a picture for Deputy Fatheree.

Page 11 of 14
CF-001-97

BY _____
Lt. James R. Dodds

DATE: 08/23/2000

CLARK_00011

## CONFIDENTIAL INVESTIGATION - CONTINUED

**INCIDENT REPORT NO.:** INTERNAL USE
**SUBJECT:** Internal investigation

---

Deputy Bennett's response to all of this writer's questions were, "I don't recall". This writer and Sgt. Mcfarren felt it was obvious that Deputy Bennett was being uncooperative during the interview given her inability to recall any facts concerning the incident of 08-23-00. This writer noticed that Deputy Bennett was being condescending with her voice tone and that she was an uncooperative interviewee. The interview was terminated.

**Investigative Findings:**

This investigation centered around two issues.

**Issue one:** Did the incident on 08-23-00 regarding the taking the pictures of breakfast trays on unit 3 take place? What was the purpose for taking the photographs? Did violations of the Summit County Sheriff's Office policy and procedure occur? Were there any acts of conduct unbecoming an Officer?

**Issue two:** Did Deputy Fatheree mislead and or lie to the Summit County Sheriff's Office when she applied for employment in reference to her state of health.

**Findings on issue one:** This writer is convinced that the incident of 08-23-00 occurred. The evidence collected in the investigation confirms this conclusion. Deputy Bennett took the picture of the jail food cart overstocked with trays. Deputy Fatheree submitted the picture to the Ohio Bureau of Workers Compensation during an appeal hearing dated 09-05-00. The evidence indicates that the pictures were staged and taken in a manner so as to conceal the act from the Summit County Sheriff's Office. The conduct of Deputies Fatheree and Bennett were clearly unbecoming a professional Law Enforcement Officer. The purpose for taking the staged pictures were to enhance the appeal process for Deputy Fatheree's workers compensation claim. Although policy and procedures do not list cameras as contraband, the policy does indicate that Deputies may only take items inside security that are necessary for the execution of their duties. A camera would not qualify under Summit County Sheriff's Office policy 8:1.0 section II F.
Evidence and statements substantiating findings:

- ❖ Deputy Redfern's statement as an eyewitness that Deputy Bennett requested all Deputies on unit three to stack breakfast trays on one food cart, (not a standard practice). Deputy Redfern's statement that Deputy Bennett removed a camera that was concealed inside her shirt and took pictures of the food cart.

- ❖ Deputy Trunko's statement the he saw two flashes in the hallway between pods two and three on the morning of 08-23-00.

Page 12 of 14
CF-001-97

BY _____
Lt. James R. Dodds

DATE: 08/23/2000

CLARK_00012

# CONFIDENTIAL INVESTIGATION - CONTINUED

**INCIDENT REPORT NO.:** INTERNAL USE
**SUBJECT:** Internal investigation

- Deputy Lemon's confidential indicating that Deputy Bennett requested that he put all the breakfast trays on one jail cart on the morning of 08-23-00.

- Deputy Newman's statement that Deputy Bennett requested that all pod Deputies stack the breakfast trays on one jail food cart on the morning of 08-23-00.

- Prosecutor Cluse's statement that Deputy Fatheree presented a photograph in her appeal hearing of an overstocked jail food cart and said it was a true and accurate representation of a food cart on the day of her injury.

- Deputy Fatheree's statement in her appeal hearing that the food cart weighed 500 lbs. when it was actually 300 lbs.

- Prosecutor Cluse's statement that Deputy Fatheree, during her second appeal hearing of 10-04-00, tried to recant her original presentation, (appeal hearing 09-05-00), of the photograph as being true and accurate.

- During the interview of Deputy Fatheree, 10-12-00, she admitted that the photograph of the jail food cart and trays were taken by Deputy Bennett. She also admitted that Deputy Bennett gave her the photograph so she could use it in her workers compensation appeal hearing dated 09-05-00.

### Findings on issue two:

- This writer through documentation and statements found that Deputy Fatheree was less than truthful in reference to statements and affirmations she made to the Summit County Sheriff's Office when making application for employment. She did not tell the truth to Detective John Karabatsos during her background interview in reference to her state of health. She submitted a doctor's physical examination form to the Summit County Sheriff's Office that was not accurate in reference to her health. At the time of application for employment with the Summit County Sheriff's Office she hid the fact that she had an ongoing workers compensation claim from which she has received medical treatment since 1978. Deputy Fatheree did not disclose that in the aforementioned claim she received a permanent partial disability payment of 10%.

### Evidence and statements substantiating issue two findings:

- Deputy Fatheree has an open and active Ohio Bureau of Workers Compensation claim since 1978 Claim # 78-57684. She has received a monetary award in this claim and prior to her application for employment with the Summit County Sheriff's Office, was classified by the Bureau of Workers Compensation as 10% partially permanently disabled.

| | | |
|---|---|---|
| Page 13 of 14 | BY  Lt. James R. Dodds | DATE: 08/23/2000 |
| CF-001-97 | | |

CLARK_00013

**CONFIDENTIAL INVESTIGATION - CONTINUED**

INCIDENT REPORT NO. : INTERNAL USE
SUBJECT : Internal investigation

- ❖ On October 18th, 1994, Deputy Fatheree filed a notarized application with the Summit County Sheriff's Office. On page three of the application she stated that she did not have any impairments that would interfere with her job duties. She also said, in her own handwriting, that she was in good health and that she was able to perform all the duties to which she was applying.

- ❖ Detective Karabatsos wrote in her background investigation that Deputy Fatheree stated she had no continuing medical problems that would keep her from performing her job duties. She also told Detective Karabatsos that she had filed one workers compensation claim, (had actually filed two at the time), and that the claim was not longer active, (not true).

- ❖ Submitted a Doctors physical examination form to the Sheriff's Office signed by Doctor Fedorko. The form indicated that she had no medical history of backache or injury, (not true), and that she was not under the continuing care of a physician, (not true).

- ❖ During Deputy Fatheree's interview she admitted to submitting the form mentioned in the previous paragraph. She also was shown a copy of her application for employment for the Summit County Sheriff's Office and confirmed that she submitted the same.

**The results of this investigation is being forwarded to the personnel department of the Summit County Sheriff's Office for administrative action.**

Page 14 of 14
CF-001-97

BY _____
Lt. James R. Dodds

DATE : 08/23/2000

CLARK_00014