**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISON**

| | | |
|---|---|---|
| Stacy Clark, | ) | **CASE NO. 5:25 CV 106** |
| | ) | |
| Plaintiff, | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| vs. | ) | |
| | ) | |
| Kandy Fatheree, et al., | ) | |
| | ) | **Memorandum Opinion and Order** |
| | ) | |
| Defendants. | ) | |

**INTRODUCTION**

This matter is before the Court upon the defendants' Motion for Summary Judgment. (Doc. 19.) This is a Section 1983 case. For the reasons that follow, the defendants' Motion for Summary Judgment is DENIED.

**FACTS**

Plaintiff Stacy Clark ("Clark") filed this action against defendants Kandy Fatheree in her official capacity as Summit County Sheriff, Kandy Fatheree in her individual and personal capacity ("Sheriff Fatheree"), and Summit County, Ohio ("Summit County") (together, "Defendants"). Clark served as a deputy sheriff with the Summit County Sheriff's Office (the "Sheriff's Office") from 1994 until her retirement in 2021. In November 2021, Sheriff Fatheree appointed Clark as a "Special Deputy" with the Sheriff's Office.

As a Special Deputy, Clark worked various extra detail jobs but primarily served as a school resource officer ("SRO") for Twinsburg School District ("Twinsburg SD") at Bissell Elementary School ("Bissell") during school years 2022–23 and 2023–24. Clark broke her ankle in July 2024 and

was unable to start the 2024–25 school year at Bissell. Special Deputies William Lee and Jerome Hall substituted for her. Clark returned as an SRO at Bissell for about one week in fall 2024 but ultimately had to take additional leave for her injured ankle. During this leave, on November 18, 2024, Sheriff Fatheree rescinded Clark's commission.

The rescission of Clark's commission is the basis of Clark's lawsuit against Defendants. Clark contends that Sheriff Fatheree wrongly rescinded her commission in retaliation for Clark's perceived political support of Sheriff Fatheree's opponent in the fall 2024 general election. Defendants maintain that Sheriff Fatheree rescinded Clark's commission because of concerns with her job performance.

On January 21, 2025, Clark filed suit against Defendants, alleging that they violated 42 U.S.C. § 1983 by retaliating against her for exercising her First Amendment rights. Defendants now move for summary judgment. Clark opposes the motion.

**STANDARD OF REVIEW**

Summary judgment is appropriate only where "there is no genuine dispute as to any material fact[.]" Fed. R. Civ. P. 56(a); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The burden of showing the absence of any such genuine dispute of material fact rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing Fed. R. Civ. P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The mere existence of a scintilla of evidence in support of the [moving

2

party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [moving party]." *Id.* at 252.

The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993). In doing so, the nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Ky. Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). "The nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *Fulson v. Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). "The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989) (citing *Frito–Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)). Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249–50 (citation omitted).

## ANALYSIS

The Sixth Circuit has instructed district courts to analyze an Ohio special deputy's First Amendment retaliation claims under the same framework as government employees. *See Gratsch v. Hamilton Cnty.*, 12 F. App'x 193, 202 (6th Cir. 2001). An employee's First Amendment retaliation claim is analyzed under a burden-shifting framework. The employee must first make a prima facie

case of retaliation, which comprises the following elements: "(1) he engaged in constitutionally protected speech or conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by his protected conduct." *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 255 (6th Cir. 2006).

If the employee establishes a prima facie case, the burden then shifts to the employer to demonstrate "by a preponderance of the evidence that the employment decision would have been the same absent the protected conduct." *Eckerman v. Tenn. Dep't of Safety*, 636 F.3d 202, 208 (6th Cir. 2010) (internal quotation marks omitted). "Unlike in the *McDonnell Douglas* burden-shifting framework, the burden does not shift back to a plaintiff to show pretext in First Amendment retaliation claims." *Dye v. Off. of the Racing Comm'n*, 702 F.3d 286, 295 (6th Cir. 2012).

Here, Defendants contend that Clark's claims fail for four reasons: (1) Clark cannot establish that Sheriff Fatheree knew of or perceived Clark as being politically affiliated with her opponent when Sheriff Fatheree made the decision to rescind Clark's commission; (2) Clark cannot establish a causal connection between her alleged protected activity and Sheriff Fatheree's decision to revoke Clark's commission; (3) Sheriff Fatheree would have taken the same action regardless of the alleged protected activity, and (4) even if her decision did violate Clark's First Amendment rights, Sheriff Fatheree is entitled to qualified immunity from liability.

### 1.  Clark Has Established a Prima Facie Case of Retaliation

Here, the undisputed evidence establishes Clark's prima facie case of retaliation. First, it is undisputed that Shane Barker ("Barker") ran against Sheriff Fatheree for her position in the fall 2024 general election and that Clark attended Barker's campaign election night party on November 5, 2024.

4

*See Dye*, 702 F.3d at 298–302 (citing *Murphy v. Cockrell*, 505 F.3d 446, 452 (6th Cir. 2007) ("[S]upport for a political candidate falls within the scope of the right of political association." (internal quotation marks omitted))); *Kubala v. Smith*, 984 F.3d 1132, 1139 (6th Cir. 2021) ("[A]ttending political functions in support of candidates . . . [is a] paradigmatic example[] of protected speech."). Further, it is undisputed that Sheriff Fatheree learned about Clark's attendance before she formally rescinded Clark's Special Deputy commission.[1]

Second, it is undisputed that Clark suffered an adverse action that would deter a person of ordinary firmness from exercising their right to political association when Sheriff Fatheree rescinded her commission. *Dye*, 702 F.3d at 303 ("It is elemental that terminations are adverse employment actions."); *Handy–Clay v. City of Memphis*, 695 F.3d 531, 545 (6th Cir.2012) ("The term 'adverse action' has traditionally referred to actions such as discharge, demotions, refusal to [h]ire, nonrenewal of contracts, and failure to promote." (internal quotation marks omitted) (alteration in original)).

Third, the undisputed evidence establishes a sufficient causal connection between Clark's perceived political association and Sheriff Fatheree's decision to rescind her commission. First, Sheriff Fatheree rescinded Clark's commission a mere eleven days after Sheriff Fatheree learned that Clark attended Barker's campaign event. *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008) ("Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute

---

[1] Defendants question whether Clark actually supported Barker's candidacy, but they also recognize that a plaintiff bringing a retaliation claim based on political affiliation need not show that he or she was actually affiliated with the particular political group or candidate. *Dye*, 702 F.3d at 300. "[R]etaliation based on perceived political affiliation is actionable under the political-affiliation retaliation doctrine." *Id.*

evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation."); *see also Singfield v. Akron Metro. Housing Auth.*, 389 F.3d 555, 563 (6th Cir. 2004) (finding three-month gap between protected speech and adverse employment action evinced temporal proximity significant enough to constitute sufficient evidence of a causal connection for the purpose of satisfying plaintiff's burden of demonstrating a prima facie case of retaliation). Second, Sheriff Fatheree testified that on November 7, 2024, when she learned about Clark's attendance at Barker's event, she told Major Scott Cottle ("Major Cottle") to "start the paperwork" to rescind Clark's commission. (Doc. 15, at 48:7–9.) Taken together, this evidence is sufficient to establish that Sheriff Fatheree's decision to rescind Clark's commission as a Special Deputy was motivated at least in part by Clark's perceived political association with Sheriff Fatheree's political opponent.

### 2. There Exists a Genuine Dispute of Material Fact as to Whether Sheriff Fatheree Would Have Rescinded Clark's Commission Absent Clark's Attendance at Barker's Campaign Event

Having found that Clark has established a prima face case of retaliation, this Court turns to determining whether Sheriff Fatheree has established by a preponderance of the evidence that her decision to rescind Clark's commission would have been the same absent the protected conduct.

Sheriff Fatheree maintains that she made the decision to rescind Clark's commission as a Special Deputy on October 28, 2024—before Sheriff Fatheree had any knowledge of Clark's political association with Barker—because officials at Twinsburg SD requested Clark's removal as an SRO due to performance concerns and unprofessionalism. Sheriff Fatheree testified that these complaints, coupled with her knowledge of Clark's past performance issues, led her to believe that "Stacy was back to her same old habits of not doing her job and not being where she's supposed to be. . . . I was

6

going to take her commission. I had planned on taking her commission that day." (Doc. 15, at 47:4–19.)

Two officials within the Sheriff's Office also testified in support of Sheriff Fatheree's recitation of events. First, Chief of Operations Larry Brown ("Chief Brown") testified that on October 25, 2024, Twinsburg SD Business Manager Matt Strickland ("Strickland") called him and inquired how Twinsburg SD could remove Clark from Bissell. He testified that Strickland told him there had been "some grumblings" and "[s]ome of the teachers and some of the principals [had] written letters and they have contacted Superintendent Powers . . . due to some sort of . . . inappropriate stuff with students and getting too involved." (Doc. 16, at 22:5–23.) Chief Brown also testified that Strickland relayed that Clark was often missing from school grounds and "she's not in the hallways, she's not present, she's not there. She's either on smoke breaks or she's gone." (*Id.* at 23:2–7.)

Chief Brown purports that he reported that conversation to Major Cottle and together they advised Sheriff Fatheree during a meeting on October 28, 2024. Both men then testified that they recall Sheriff Fatheree deciding to rescind Clark's commission as a Special Deputy around the time of that meeting.

The problem, however, is that the testimony of the officials from Twinsburg SD casts serious doubt on this version of events. Most concerning, Strickland's testimony directly contradicts Chief Brown's testimony that Strickland told him Twinsburg SD affirmatively wanted Stacy removed from Bissell because "teachers and some principals" thought Clark was "getting too involved" with the students. First, Strickland testified that he did not recall telling Chief Brown that anyone wanted to remove Clark as the SRO at Bissell. He testified that it was possible, but he could not recall. But even so, Strickland testified that he was unaware of any complaints or letters from teachers until May 30,

7

2025, when the principal of Bissell, Misty Johnson ("Principal Johnson"), included this information in notes about Clark's departure that she texted to Strickland.[2] Accordingly, based upon Strickland's testimony, it would have been impossible for him to have relayed that information to Chief Brown in October 2024.

Related, Principal Johnson testified that she did not want Clark removed from Bissell. While she testified that she did have a personal preference for Officer Lee, she testified that it was not because of any concerns with Clark. Even so, she testified that she never communicated to anyone a desire to have Clark removed as SRO or her personal preference for a different SRO. Further, her testimony aligns with Strickland's testimony that Principal Johnson did not share information about any teacher's complaints with Strickland until May 30, 2025, when Strickland asked her for information about her interactions with Clark in October 2024.[3]

Given the conflicting testimony between Sheriff Fatheree, Major Cottle, and Chief Brown and Strickland and Principal Johnson, there exists a genuine issue of material fact as to whether Sheriff

---

[2] Strickland requested information about Principal Johnson's recollection from the time around Clark's departure in October 2024 at Chief Brown's request in May 2025—after Clark filed this lawsuit. To be sure, Strickland forwarded Principal Johnson's test message verbatim to Chief Brown. Strickland testified that he was unaware of why exactly Chief Brown requested the information, but he was aware a lawsuit had been filed.

[3] This Court acknowledges that Defendants produced a memo purporting to detail Chief Brown's October 2024 phone call with Strickland. Plaintiff elicited during Chief Brown's deposition that he did not create the memo until February 2025. The timing and contents of the memo only underscore the genuine factual dispute between the two versions of events here.

Defendants also attached a declaration to their reply brief from Officer Lee, in which he avers that Principal Johnson told him that some teachers said they felt safer with him at Bissell. Plaintiff filed an "objection" to this declaration as inadmissible hearsay. Even if the Court were to consider Officer Lee's declaration for the truth of the matter asserted, it also only underscores the disputed narrative here.

Fatheree could have decided to rescind Clark's commission on October 28, 2024, because of complaints from Twinsburg SD. Ultimately, the fact finder will decide which testimony is more credible. *Anderson*, 477 U.S. 242 at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]"); *see also Su v. KDE Equine, LLC*, 2024 WL 5199300, at *2 (6th Cir. Dec. 23, 2024) ("To resolve the competing versions of events, testimony must be taken; credibility determinations must be made; and facts must be found.").

Sheriff Fatheree's alternative rationale for rescinding Clark's commission faces a similar factual credibility issue. Sheriff Fatheree contends that she personally did not trust Clark because of her past performance issues and did not want to assume civil liability over her actions as Special Deputy. The obvious inconsistency, however, is that Sheriff Fatheree did initially commission Clark as a Special Deputy (despite having knowledge of her past performance issues).[4] Sheriff Fatheree is of course free to reevaluate her decision to extend a commission to any Special Deputy, but she is not free to rescind a commission because of the Special Deputy's perceived political association. Here too, it will be for the fact finder to decide whether they find Sheriff Fatheree's explanation credible in light of the evidence presented. *Anderson*, 477 U.S. 242 at 255.

### 3. Sheriff Fatheree Is Not Entitled to Qualified Immunity

"Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not

---

[4] The years-long gap between Clark's last undisputed performance issue and Sheriff Fatheree's decision to rescind Clark's commission renders inapposite the cases Defendants rely on in support of their position. (Doc. 19, at 20–21 (citing *Garvey v. Montgomery*, 128 F. App'x 453 (6th Cir. 2005) and *Holsapple v. Cunningham*, 817 F. App'x 95 (6th Cir. 2020)).)

violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane Cnty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In resolving a government official's qualified immunity claims, courts look to whether (1) the facts that the plaintiff has alleged or shown establish the violation of a constitutional right, and (2) the right at issue was "clearly established" at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

Sheriff Fatheree contends that even if she violated Clark's constitutional rights, she is entitled to qualified immunity because Clark cannot point to any precedent specifically extending these First Amendment rights to the "unique" position of a Special Deputy. This Court finds Defendants' characterization of the Special Deputy position as disingenuous and not dispositive under the controlling jurisprudence.

It is clearly established that, with a few exceptions, a government official violates the free speech rights of a public employee if the official discharges or demotes an employee because the employee supports a particular political candidate. *Heffernan v. City of Paterson*, 578 U.S. 266, 270 (2016). Termination on this basis is unlawful whether that support is actual or only perceived. *Id.* at 273; *see also Dye*, 702 F.3d at 299. Further, *O'Hare Truck Serv., Inc. v. City of Northlake*, 518 U.S. 712 (1996) extends these protections to persons in positions akin to government employees, specifically "independent contractors" and "regular provider[s] of services." *Id.* at 715, 726 ("We cannot accept the proposition, however, that those who perform the government's work outside the formal employment relationship are subject to what we conclude is the direct and specific abridgment of First Amendment rights described in this complaint.").

10

Behind these clearly established precedents is other controlling political affiliation jurisprudence that has explicitly refused to delineate the reach of free speech rights in the employment context based merely on the title attributed to an individual's position. *O'Hare*, 518 U.S. at 726 ("We decline to draw a line excluding independent contractors from the First Amendment safeguards of political association afforded to employees."). Said another way, the law has developed such that it is not an individual's title that determines whether they are afforded First Amendment protections— it is their relationship with the government that does. *See Sowards v. Loudon Cnty.*, 203 F.3d 426, 439 n.4 (6th Cir. 2000) ("We emphasize again that the actual duties of a particular position, and not its title, govern the *Elrod/Branti* [exception] analysis. . . . Therefore, in deciding whether the law was clearly established for the purpose of qualified immunity, we look for decisions that involve positions with the same or similar statutory duties.").[5]

Here, it is undisputed that a Special Deputy is an "at[-]will employee," hired at the privilege of the Sheriff, who is responsible and liable for their actions. (Doc. 16, at 10:11–13 (Deposition of Chief Brown).) They are "fully authorized law enforcement officer[s]." (Doc. 17, at 12:6–7 (Deposition of Major Cottle).)) Special Deputies compete with full-time deputies for extra assignments, such as special event security. Special Deputies are compensated for their work at these

---

[5] The Supreme Court has reiterated that "[t]he constitutional harm at issue in the ordinary [political affiliation] case consists in large part of discouraging employees—both the employee discharged (or demoted) and his or her colleagues—from engaging in protected activities. The discharge of one tells the others that they engage in protected activity at their peril." *Heffernan*, 578 U.S. at 273 (citing *Elrod v. Burns*, 427 U.S. 347, 359 (1976)). Refusing distinctions based on mere titles helps prevent this type of constitutional harm. *O'Hare*, 518 U.S. at 712 (warning that allowing constitutional claims to turn on how an employment relationship is classified would "invite manipulation by government, which could avoid constitutional liability simply by attaching different labels to particular jobs" (citing *Umbehr*, 518 U.S. at 679)).

11

assignments, however, not by the Sheriff's Office, but by the third-party entities utilizing their services. Still, Special Deputies were required to submit electronic timesheets for approval by the Sheriff's Office before receiving payment. Further, Special Deputies are often required to wear and to use a Sheriff's Office uniform, equipment, and vehicles when working an assignment. The Sheriff's Office also requires Special Deputies to complete 40 hours of basic training per year and mandates that they volunteer eight hours per month, often in the Summit County Jail.

Given this undisputed evidence, it seems clear to this Court that special deputies are akin to formal government employees for purposes of determining the contours of their free speech rights. As such, the law clearly established in November 2024 that Sheriff Fatheree could not rescinded the commission of a special deputy because of her perceived political affiliation.[6]

Alternatively, Sheriff Fatheree contends that she is entitled to qualified immunity because Clark has not pointed to any precedent that "placed [Sheriff] Fatheree on notice that it was clearly unlawful ('beyond debate') for her to rescind Clark's commission in light of her disreputable employment history and now a new complaint about poor performance and unprofessionalism." (Doc. 19, at 25.) This alternative rationale presupposes Sheriff Fatheree's version of underlying events is true, in which case this Court would not need to consider whether she is entitled to qualified immunity. Sheriff Fatheree is correct the law does not prevent her from rescinding the commission of a Special Deputy because of legitimate performance-related concerns. Sheriff Fatheree ignores,

---

[6] Tellingly, Defendants confront this issue in their initial brief in support of their motion, but they wholly fail to address Clark's counterpoints in their reply brief. Instead, Defendants seemingly abandon this argument and shift to an alternative argument. A party's failure to address an issue constitutes a waiver or abandonment of that argument. *See Sault St. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998).

12

however, that the law *does* prevent her from rescinding the commission of a Special Deputy because of their perceived political associations.[7]

**CONCLUSION**

For the foregoing reasons, the Defendants' Motion for Summary Judgment is DENIED.

IT IS SO ORDERED.

PATRICIA A. GAUGHAN
United States District Judge

Date: 4/21/26

---

[7] In their motion, Defendants ask this Court to grant Defendants summary judgment on Plaintiff's *Monell* claim against Summit County and state-law claims against Sheriff Fatheree on the basis that they believe Clark's First Amendment claim fails. Defendants offer no alternative basis for their position. Because this Court has found that Clark's First Amendment claim survives Defendants' motion for summary judgment, Plaintiff's other claims survive as well.